**Geneva I. LONG and Raymond C. Long, Plaintiffs/Appellees,**

v.

**Basil M. MATTINGLY, Individually and d/b/a Marion Mission, an Unincorporated Association or an Individual Proprietorship, and Marion Mission Company, a Corporation, Defendants/Appellants.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

July 5, 1990.

Permission to Appeal Denied by Supreme Court Oct. 22, 1990.

890

John T. Rice, Paul E. Scott, Luther, Anderson, Cleary & Ruth, Chattanooga, for defendants-appellants.

Joe Timberlake, Chattanooga, for plaintiffs-appellees.

## OPINION

KOCH, Judge.

This appeal involves an automobile accident in South Pittsburg. The driver whose automobile was struck from behind and her husband filed an action in the Circuit Court for Marion County against the driver of the second automobile and his employer. After the jury awarded $100,000 to the plaintiff-driver and $25,000 to her husband, the plaintiffs accepted remittiturs reducing the awards to $85,000 and $20,000 respectively. The defendants have appealed, insisting that they were entitled to a directed verdict, that the jury instructions were erroneous, and that evidence concerning the reasonableness of a portion of the medical expenses was inadmissible. We have determined that judgment should be affirmed but that the damage awards should be reduced further to $50,000 and $10,000 respectively.

### I.

Geneva Long was returning home from her hairdresser early on the afternoon of May 25, 1985 when she decided to go to the Dollar General Store in South Pittsburg. She traveled west on Cedar Street and stopped behind two other cars at a traffic signal at the intersection of Fifth and Cedar Streets. After the intersection, Cedar Street changes from a two-lane to a five-lane road with a dedicated turn lane. The Dollar General Store was only a short distance from the intersection, and Mrs. Long intended to make a left turn into the store's parking lot after passing through the intersection.

The car in front of her began to move into the intersection when the signal turned green. Shortly thereafter, Mrs. Long's car was struck from behind by a car being driven by Basil Mattingly. The impact of the collision pushed Mrs. Long's car into the car in front of her being driven by Roxanne Earvin. Ms. Earvin's car was not damaged, and the rear of Mrs. Long's car was only slightly damaged.

Ms. Earvin and Mr. Mattingly were not injured. Mrs. Long left the scene thinking that she was not hurt. However, she developed a headache later in the afternoon and experienced pain and swelling in her neck the next day. During the next two

years, she was treated by four different physicians for cervical and lumbar strain. The treatment included occipital nerve injections, physical therapy, and various medications.

## II.

Mr. Mattingly and his employer first take issue with the denial of their motion for a directed verdict. While conceding that Mr. Mattingly's car struck Mrs. Long's car, they assert that Mrs. Long failed to prove that the accident was the proximate cause of the pain and numbness in her neck, arms, and back. We disagree.

■ Directed verdicts are appropriate when the evidence supports only one conclusion. *Gann v. International Harvester Co.*, 712 S.W.2d 100, 105 (Tenn.1986); *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn.1977). They are inappropriate when the material facts are in dispute or when there is substantial disagreement concerning the conclusions to be drawn from the evidence. *Sauls v. Evans*, 635 S.W.2d 377, 379 (Tenn.1982); *Maddux v. Cargill, Inc.*, 777 S.W.2d 687, 691 (Tenn.Ct.App.1989).

■ Appellate courts take the strongest legitimate view of the evidence favoring the opponent of the motion when called upon to determine whether a trial court should have granted a directed verdict. They also allow all reasonable inferences in favor of the motion's opponent and disregard all evidence contrary to the opponent's position. *Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn.1980); *Maddux v. Cargill*, 777 S.W.2d at 691; *Solomon v. First Am. Nat'l Bank*, 774 S.W.2d 935, 940 (Tenn.Ct.App.1989).

■ Mrs. Long testified, without contradiction, that she did not have problems with either her neck, arm, or back prior to the accident. She complained of headaches as well as swelling and pain in her back short-

ly after the accident. Her treating physicians opined, based on a reasonable degree of medical certainty, that she was suffering from cervical and lumbar strains and occipital neuralgia and that this condition "frequently follows a whiplash-type injury which is what she described." This evidence was sufficient to make out a prima facie case on proximate cause.

## III.

Mrs. Long consulted four physicians during the two years after her accident. She made three visits to Dr. Stanley Payne, a Chattanooga orthopaedic surgeon, between May and July, 1985. Then she switched to Dr. H. Barrett Heywood, another Chattanooga orthopaedic surgeon, who treated her from July, 1985 through March, 1986. At Dr. Heywood's direction, Mrs. Long underwent six weeks of physical therapy at Erlanger Hospital in 1985.

When Mrs. Long's pain continued, Dr. Heywood referred her to Dr. Hufstutter, a Chattanooga rheumatologist. After three visits, Dr. Hufstutter referred Mrs. Long to Dr. Walter M. Boehm, a Chattanooga neurosurgeon. Dr. Boehm has treated Mrs. Long since May, 1986. In 1986, at Dr. Boehm's direction, Mrs. Long underwent another fourteen weeks of physical therapy with a private therapist.

Mrs. Long testified concerning her injuries and the history of her medical treatment. She then introduced the portions of Dr. Heywood's and Dr. Boehm's depositions in which they opined that the medical treatment and physical therapy she received was necessary and reasonable. Her proof with regard to medical expenses concluded with her husband introducing $6,173.19 worth of medical bills into evidence.[1]

Mr. Mattingly and his employer now challenge the admissibility of the doctors' opinions concerning the necessity of Mrs.

---

**1.** Mrs. Long did not attempt to recover the cost of the three visits she made to the rheumatologist because neither of her testifying doctors would give an opinion concerning the reasonableness of his charges.

Long's medical treatment and the reasonableness of the charges. They assert that these opinions were based on hearsay and that both physicians were not competent to give their opinions about the other physicians' treatment or charges because they had not examined the other physicians' files. We disagree.

Both Dr. Heywood and Dr. Boehm testified that the treatment they provided Mrs. Long was necessary and that their own charges were reasonable. This testimony was clearly admissible. Thus, this issue pertains only to the treatment Mrs. Long received from Dr. Payne and the physical therapy she received at the direction of Dr. Heywood and Dr. Boehm.[2]

■ A physician who is familiar with the extent and nature of the medical treatment a party has received may give an opinion concerning the necessity of another physician's services and the reasonableness of the charges. *Employers Ins. of Wausau v. Carter*, 522 S.W.2d 174, 176 (Tenn.1975). To be qualified to render these opinions, the physician must first demonstrate (1) knowledge of the party's condition, (2) knowledge of the treatment the party received, (3) knowledge of the customary treatment options for the condition in the medical community where the treatment was rendered, and (4) knowledge of the customary charges for the treatment. *See Nash v. Carter*, App. No. 87–192–11, Slip op. at 13, 1987 WL 19312 (Tenn.Ct.App. Nov. 4, 1987).

■ Both Dr. Heywood and Dr. Boehm were familiar with Mrs. Long's condition because they had treated her for the same injuries Dr. Payne had treated her for. Both physicians practiced in Chattanooga where Dr. Payne practiced. Dr. Heywood practiced in the same specialty Dr. Payne practiced, and Dr. Boehm testified that there was a great deal of overlapping between his specialty and Dr. Payne's specialty insofar as conditions like Mrs. Long's

were concerned. Accordingly, both Dr. Heywood and Dr. Boehm established their familiarity with the Chattanooga medical community's customary treatment and charges for Mrs. Long's condition.

Dr. Heywood and Dr. Boehm became acquainted with the services Dr. Payne provided Mrs. Long by examining a tabulation of all of Mrs. Long's medical bills prepared by her lawyer. The tabulation showed (1) the name of each provider, (2) the date the service or product was provided, (3) a description of the service or product, and (4) the charge for the service or product. Even though he conceded at trial that the tabulation was "probably" correct, Mr. Mattingly's attorney now attacks Dr. Heywood's and Dr. Boehm's opinions because they were based on the tabulation rather than the actual bills themselves.

■ There is no proof that the tabulation was inaccurate or deceptive or that all parties did not have access to the bills on which it was based. The bills themselves were properly introduced into evidence at trial, and even a cursory comparison of the tabulation and the bills reveals that the bills themselves contain no relevant information that did not also appear on the tabulation. Under these circumstances, the trial court properly found that Mrs. Long's medical experts could base their opinion on the necessity and reasonableness of the treatment and charges based on their personal knowledge of her condition and their review of the abstract of the bills. *See* 32 C.J.S. *Evidence* § 698 (1964); *State v. Wiseman*, 643 S.W.2d 354, 365 (Tenn. Crim.App.1982).

Similarly, both Dr. Heywood and Dr. Boehm were competent to testify concerning the necessity of the physical therapy Mrs. Long received and the reasonableness of the charges for the therapy. With regard to the necessity issue, both physicians testified that they prescribed the therapy because they thought Mrs. Long's condi-

---

2. The necessity and reasonableness of Dr. Hufstutter's treatment and charges are not at issue

because Mrs. Long did not include these charges in her proof of damages.

tion required it. With regard to the reasonableness of the charges, both physicians testified that they were familiar with the charges for physical therapy in the Chattanooga area and that Mrs. Long's bills were reasonable in light of the therapy she received.

## IV.

▇ Mr. Mattingly and his employer also contend that the trial court improperly prevented their lawyer from including arguments based on the theories of contributory negligence and unavoidable accident in his final summation to the jury. We disagree. These affirmative defenses were never pled, and no evidence was introduced to support them.

The defendants did not assert contributory negligence as a defense prior to trial. While their lawyer briefly alluded to the defense in his opening statement, he elicited no proof to support the defense either by cross-examining the plaintiffs' witness or by direct proof. He rested his case without putting on any proof and neglected to move to conform his pleadings to the proof at the conclusion of the evidence.

The trial court informed the parties that it did not intend to give a contributory negligence instruction when it denied the motion for directed verdict at the close of the plaintiffs' proof. The defense lawyer did not request an instruction on this defense and did not argue the defense to the jury. Notwithstanding its earlier statements, the trial court alluded briefly to the contributory negligence and unavoidable accident theories in its instructions to the jury.[3]

Mr. Mattingly and his employer insist that support for their contributory negligence defense can be found in the discrepancy between Mrs. Long's testimony and Ms. Earvin's testimony regarding the lane

in which Mrs. Long's car was located when the accident occurred. We do not view this discrepancy, if indeed there is one, to be material. Without proof that Mrs. Long was failing to obey other rules of the road, the location of her car at the time of the accident was immaterial since she was struck from the rear. Accordingly, the appellants' lawyer was not improperly deprived of his right to argue these theories to the jury.

## V.

▇ Mr. Mattingly and his employer also take issue with seven aspects of the trial court's charge to the jury. Trial courts have the duty to give accurate instructions that are applicable to the facts in evidence. *Street v. Calvert*, 541 S.W.2d 576, 584 (Tenn.1976); *Bass v. Barksdale*, 671 S.W.2d 476, 490 (Tenn.Ct.App.1984). Our task on appeal is to review the challenged instructions in the context of the entire charge to determine whether they fully and fairly embody both parties' theories of the case. *Mid–South Pavers, Inc. v. Whitaker*, 53 Tenn.App. 584, 593, 385 S.W.2d 284, 288 (1964).

## A.

Mr. Mattingly did not attend the trial because he had left for Africa to perform missionary work. While we are not privy to the circumstances surrounding his departure, it is apparent that neither party deposed him before he left. The appellants take issue with the trial court giving the jury the absent material witness charge because Mrs. Long could also have deposed Mr. Mattingly before he left had she desired.

▇ The absent material witness charge embodies the negative inference that the testimony of a material witness who does not testify would have been unfa-

---

**3.** It is not surprising that Mr. Mattingly and his employer are not taking issue with the references in the trial court's instructions to contributory negligence and unavoidable accident.

While these references should not have been in the instructions, their inclusion was certainly not prejudicial to the defendants.

vorable to the party who could have called the witness but failed to do so without a justifiable excuse. *National Life and Accident Ins. Co. v. Eddings*, 188 Tenn. 512, 518, 221 S.W.2d 695, 697 (1949). It should be given solely because a party does not call a witness available to it. In order for the instruction to be appropriate, the party seeking it must demonstrate: (1) that its adversary could have called the witness, (2) that the evidence was not equally available to or that the witness was likely to be biased against the party seeking the instruction, (3) that a reasonably prudent litigant would have called the witness if the witness' testimony would have been favorable, and (4) that the party expected to call the witness had no reasonable excuse for not doing so.

 Mr. and Mrs. Long were entitled to the absent material witness charge with regard to Mr. Mattingly. Mr. Mattingly was obviously available to his own lawyer, and his testimony would have been unfavorable to the Longs' case. His lawyer would have preserved Mr. Mattingly's testimony had it been favorable and offered no reasonable excuse for not doing so.

### B.

 The trial court also instructed the jury that Mr. Mattingly and his employer were to be viewed as one. Mr. Mattingly and his employer assert that this instruction was not supported by the evidence. While the Longs did not introduce any direct proof that Mr. Mattingly was an employee of Marion Mission, they did prove that Marion Mission was the registered owner of the car Mr. Mattingly was driving when the accident occurred.

In actions for personal injuries caused by the negligent operation of an automobile, Tenn.Code Ann. §§ 55–10–311, –312 (1988) provide that proof of the vehicle's ownership and registration is prima facie evidence that the vehicle was being used with the authority and for the benefit of the owner. Marion Mission offered no proof to

rebut the statutory presumptions; consequently, the trial court's instructions were proper.

### C.

 The trial court declined to give a number of special instructions requested by Mr. Mattingly and his employer. However, trial courts are not required to give special instructions when their substance is already covered in the general charge, *Jack M. Bass & Co. v. Parker*, 208 Tenn. 38, 49, 343 S.W.2d 879, 884 (1961), or when they are not supported by the evidence. *Payne v. Nashville, C. & St. L. Ry.*, 106 Tenn. 167, 173–74, 61 S.W. 86, 87 (1900). The omitted instructions were adequately covered in the charge; therefore, the trial court did not err in declining to give them.

### D.

We have also considered the remaining four issues with regard to the instructions and find them to be insubstantial. The charge did not over-emphasize Mrs. Long's damages and neglect the defendants' theory of the case. There was sufficient evidence in the record, albeit slight, to warrant the negligence instructions as well as the instructions involving future medical expenses. We find that the instructions, taken as a whole, fairly embodied the parties' theories that were supported by the facts.

### VI.

The trial court reduced the damages the jury awarded to Mrs. Long from $100,000 to $85,000 and the damages awarded to Mr. Long from $25,000 to $20,000. The Longs do not challenge these remittiturs on appeal even though they accepted them under protest. However, Mr. Mattingly and his employer insist that they were insufficient. We agree.

 The calculation of damages in personal injury cases is primarily for the jury. *Bates v. Jackson*, 639 S.W.2d 925, 927

(Tenn.1982); *Lunn v. Ealy,* 176 Tenn. 374, 376, 141 S.W.2d 893, 894 (1940). However, the trial courts have had the statutory prerogative since the turn of the century to adjust damage awards to accomplish justice between the parties and to avoid the time and expense of a new trial. Tenn. Code Ann. §§ 20–10–101, –102 (Supp.1989); *Burlison v. Rose,* 701 S.W.2d 609, 611 (Tenn.1985); *Foster v. Amcon Int'l, Inc.,* 621 S.W.2d 142, 147 (Tenn.1981); *Pitts v. Exxon Corp.,* 596 S.W.2d 830, 835 (Tenn. 1980); *Murphy Truck Lines v. Brown,* 203 Tenn. 414, 422, 313 S.W.2d 440, 443 (1958).

■ The role of the appellate courts is to determine whether the trial court's adjustments were justified, giving due credit to the jury's decision regarding the credibility of the witnesses and due deference to the trial court's prerogatives as thirteenth juror. *Burlison v. Rose,* 701 S.W.2d at 611; *Bates v. Jackson,* 639 S.W.2d at 926–27; *Foster v. Amcon Int'l, Inc.,* 621 S.W.2d at 145.

■ The contours of the scope of appellate review have changed over the years. Now, the appellate courts customarily conduct a three-step review of a trial court's adjustment of a jury's damage award. First, we examine the reasons for the trial court's action since adjustments are proper only when the court disagrees with the amount of the verdict. *Burlison v. Rose,* 701 S.W.2d at 611. Second, we examine the amount of the suggested adjustment since adjustments that "totally destroy" the jury's verdict are impermissible. *Foster v. Amcon Int'l, Inc.,* 621 S.W.2d at 148; *Guess v. Maury,* 726 S.W.2d 906, 913 (Tenn.Ct.App.1986). Third, we review the proof of damages to determine whether the evidence preponderates against the trial court's adjustment. *See* Tenn.Code Ann. § 20–10–102(b).

■ If, after reviewing the record, we determine that the adjusted damage award is still excessive, we have the prerogative under Tenn.Code Ann. § 20–10–103(a) (Supp.1989) to reduce the damages further.

*Ellis v. White Freightliner Corp.,* 603 S.W.2d 125, 129 (Tenn.1980); *Porter v. Green,* 745 S.W.2d 874, 879 (Tenn.Ct.App. 1987). We have reviewed the proof of the Longs' damages in this case and have determined that the remitted awards are still excessive and are contrary to the preponderance of the evidence.

Mrs. Long was fifty-seven years old when the accident occurred. The record contains little evidence concerning her intelligence, skills, talents, experience, training, or industry. *See Clinchfield R.R. v. Forbes,* 57 Tenn.App. 174, 184–85, 417 S.W.2d 210, 215 (1966). Her only employment outside the home appears to have been selling cosmetics door-to-door sometime in 1976. She was not employed at the time of the injury or at trial.

Mrs. Long's medical expenses amounted to approximately $6,175. Her soft-tissue injury appeared to have resolved itself by the time of the trial. There is no proof that her condition prevents her from being employed, and there is little proof that she will require additional, significant medical treatment. While she has some residual pain and restriction of movement, she appears to have resumed her normal activities—being a housewife, collecting antique bottles, and traveling to flea markets. The only specific restrictions on her activities mentioned in the record include (1) mowing the grass for her husband, (2) getting the dishes out of the cabinet, (3) running the vacuum cleaner, and (4) lifting heavy boxes filled with antique bottles.

We agree with the trial court's conclusion that awarding $100,000 to Mrs. Long and $25,000 to Mr. Long was excessive under these facts. However, we also find that the evidence preponderates against awarding them $85,000 and $20,000 respectively as decreed by the trial court. Based on our own review of the record, we find that the proof, taken as a whole, entitles Mrs. Long to $50,000 and Mr. Long to $10,000.

### VII.

We affirm the trial court's judgment as modified by this opinion. The case is re-

manded to the trial court for any further proceedings consistent with this opinion. We tax the costs in equal proportions to Raymond and Geneva Long and to Basil Mattingly and Marion Mission Company and their respective sureties for which execution, if necessary, may issue.

LEWIS and CANTRELL, JJ., concur.