IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

January 14, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

DAN ALEXANDER,                        ) C/A NO. 03A01-9807-CV-00205
                                      )
        Plaintiff-Appellee,           )
                                      )
                                      )
                                      )
                                      )
v.                                    ) APPEAL AS OF RIGHT FROM THE
                                      ) WASHINGTON COUNTY CIRCUIT COURT
                                      )
                                      )
                                      )
                                      )
JAY ARMENTROUT, JR., and              )
PATRICIA RUTH ARMENTROUT,             )
                                      ) HONORABLE LEWIS W. MAY,
        Defendants-Appellants.        ) JUDGE



For Appellants                    For Appellee

MICHAEL A. EASTRIDGE              TIMOTHY S. BELISLE
Johnson City, Tennessee          Johnson City, Tennessee



O P I N I O N



REVERSED AND REMANDED                          Susano, J.

This jury case involves litigation arising out of the dissolution of a dairy farm partnership. Dan Alexander ("Alexander") sued his brother-in-law,[1] Jay Armentrout, Jr. ("Mr. Armentrout"), and Mr. Armentrout's wife, Patricia Ruth Armentrout ("Mrs. Armentrout"), seeking to recover monies allegedly due him for the sale of his one-half interest in the Alexander-Armentrout Dairy partnership ("the partnership"). The jury returned a verdict[2] for Alexander, and the Armentrouts appealed. They raise issues that essentially present the following questions:

1. Did the trial court err in denying the Armentrouts' motions for directed verdict and judgment notwithstanding the verdict?

2. Did the trial court err in refusing to grant the Armentrouts a new trial?

3. Did Mr. Armentrout's delivery of a promissory note to Alexander, and the latter's unconditional acceptance of payments under the note, operate as a waiver and/or an estoppel so as to prevent Alexander from later denying the terms of the note under which the payments were made and from asserting different terms as to the repayment of the underlying obligation?

4. Does an agent who signs a promissory note on behalf of a disclosed principal, leaving a personal signature line unsigned, incur personal liability for the debt evidenced by the promissory note?

5. Is the spouse of the agent signing the promissory note liable for repayment of the note when the obligee on the note admits she never explicitly agreed to pay the note; she did not sign the note; and she did not participate in the agreement for the purchase of the partnership interest that was the consideration for the note?

_____

[1]Alexander is married to Mr. Armentrout's sister.

[2]The parties agreed that an award of $70,432.15 was appropriate in the event the jury found in favor of Alexander.

2

I.


Alexander and Mr. Armentrout owned and operated the partnership, a dairy farm, from 1980 to 1993. Having decided to dissolve their business relationship in 1993, they agreed that Mr. Armentrout would purchase Alexander's interest in the partnership for $111,000. Under the parties' agreement, Mr. Armentrout was to receive all of the partnership's assets and assume all of its liabilities. Mr. Armentrout paid Alexander $50,000 in the form of a cashier's check. They agreed that the balance of $61,000 would be paid over time on a promissory note. The bank officer, who was present in July, 1993, when the $50,000 payment was made, expressed several suggestions as to the terms of the note. Alexander and Mr. Armentrout agreed that the latter would arrange to have a promissory note prepared and would present it to Alexander.

Mr. Armentrout asked the partnership's accountant, Kenneth McCurry, to prepare a promissory note. As requested, Mr. McCurry drafted a note for $61,000 reciting that "[f]or value received, Jay Armentrout d/b/a Armentrout Acres, Inc., promises to pay to the order of Dan Alexander...." At the bottom of the note, the following typing can be found:


Armentrout Acres, Inc.

Signature _____
        By Jay Armentrout

Signature _____
        Jay Armentrout

Mr. Armentrout affixed his signature on the line just underneath "Armentrout Acres, Inc." He left the second signature line blank. He then delivered the note to Alexander around the end of August, 1993 -- some six to eight weeks after the initial $50,000 payment had been made.

The parties did not discuss the note when it was delivered to Alexander. Alexander took the note home, looked at it that night, and reviewed it on two subsequent occasions. He testified that he had realized on the day he received the note that it contained terms with which he did not agree. Despite this realization, he admitted that he had said nothing to Mr. Armentrout. The note burned in a fire at Alexander's home in September, 1993.

In June, 1995, Alexander received a check for $6,310 that was drawn on the Armentrouts' personal bank account as the first payment on the note. He deposited this check into his bank account. He received a second payment of $6,310 in January, 1996, in the form of a check drawn on Armentrout Acres, Inc.'s bank account. He again deposited the check into his bank account. Shortly thereafter -- now some two years plus since he had received the note from Mr. Armentrout -- Alexander had his attorney draw up a new promissory note for $61,000. Alexander sent this note, along with a check for $700 and a letter, to Mr. Armentrout. The letter stated that Mr. Armentrout had overpaid the interest on the note and that Mr. Armentrout should sign and return the new note because he owed the full $61,000 from the buy-out of the partnership.

5

When Mr. Armentrout refused to sign the new note, Alexander brought this suit against the Armentrouts alleging breach of contract.

Alexander contends that the note handed to him by Mr. Armentrout does not contain the true terms of the contract. He argues that his agreement was with the Armentrouts and not with Mr. Armentrout's corporation, Armentrout Acres, Inc. He contends that the Armentrouts are both personally liable on the $61,000 obligation. Mr. Armentrout, on the other hand, contends that Alexander accepted the note and that his corporation, Armentrout Acres, Inc., is liable on the note. Mrs. Armentrout contends that she is not a party to the contract, did not sign the note, and is otherwise not liable on the note.

Alexander argues that he did not accept the note, and that both of the Armentrouts breached the contract for the purchase of his share of the partnership.

II.

Our standard of review is well-settled. A directed verdict is appropriate only when the evidence is susceptible to but one conclusion. **Eaton v. McLain**, 891 S.W.2d 587, 590 (Tenn. 1994); **Long v. Mattingly**, 797 S.W.2d 889, 892 (Tenn.App. 1990). We must "take the strongest legitimate view of the evidence favoring the opponent of the motion when called upon to determine whether a trial court should have granted a directed verdict." **Id.** In addition, all reasonable inferences in favor of the

6

opponent of the motion must be allowed and all evidence contrary to the opponent's position must be disregarded. *Eaton,* 891 S.W.2d at 590; *Long*, 797 S.W.2d 892.

III.

We consider first the issue of whether Alexander is equitably estopped from denying his acceptance of the promissory note delivered by Mr. Armentrout.

Alexander acknowledges that Mr. Armentrout gave him a promissory note for $61,000 approximately six to eight weeks after the closing of the sale in July, 1993. It was not until some time in 1996 that Alexander[3] notified Mr. Armentrout that he refused to accept the terms of the promissory note. Nearly two and one-half years elapsed from the time that Alexander received the promissory note from Mr. Armentrout, until he first notified Mr. Armentrout that he had not accepted the promissory note. Alexander further admitted that during this period he accepted two payments on the note.

The rule of equitable estoppel is pertinent:

> [E]quitable estoppel embraces not only ideas
> conveyed by words written or spoken and
> things actually done but includes the silence
> of one under a duty to speak and his omission
> to act, as well; negligent silence may work
> an equitable estoppel, and acts or conduct
> which are calculated to mislead and do in

---

[3]Although Alexander contacted Mr. Armentrout to obtain a copy of the note on several occasions, he never disclosed to Mr. Armentrout on any of these occasions that the terms of the note were unacceptable.

> fact mislead will work an estoppel
> notwithstanding there was no intention to do
> so.

*Lusk v. Consol. Alum. Corp.*, 655 S.W.2d 917, 920 (Tenn. 1983).

Alexander's failure to express his dissatisfaction with the

tendered promissory note, and his acceptance of two payments on

the note, were uncontroverted at trial. "Where the facts

constituting the estoppel are undisputed,... the question of

estoppel becomes one of law and may be determined by the Court."

*Consolidated Coal Co. v. O'Brien*, 3 Higgins 252, 266 (Tenn.App.

1913). Taking the strongest legitimate view of the evidence

favoring Alexander and disregarding all countervailing evidence,

we find that Alexander accepted the corporation's note in

satisfaction of the underlying obligation to pay him $61,000.


We recognize that Alexander testified as to his

unexpressed subjective intent not to accept the promissory note

because it did not accurately express the terms of his deal with

Mr. Armentrout. Under the facts of this case, however, "the

unspoken subjective intent of a party is not relevant." *See*

*Malone & Hyde Food Services v. Parson*, 642 S.W.2d 157, 159

(Tenn.App. 1982). Alexander accepted the note, and his claim

against Mr. Alexander must rise or fall on that instrument.


IV.


Having determined that Alexander accepted the

promissory note, the sole issue remaining as to Mr. Armentrout is

8

whether he is personally liable on that instrument.  T.C.A. § 47-3-402(b)(1) is dispositive of this issue:

> (b)  If a representative signs the name of the representative to an instrument and the signature is an authorized signature of the represented person, the following rules apply:
>
> > (1) If the form of the signature shows unambiguously that the signature is made on behalf of the represented person who is identified in the instrument, the representative is not liable on the instrument.

*Id.*

Our cases addressing the liability arising from the signature of an authorized representative applied an earlier version of the pertinent statute.[4]  However, our case law uniformly holds that the ambiguity of a document must be determined from its face, and, as such, is a question of law. ***Warrior Transport, Inc. v. Thompson***, 1989 WL 9561 (Tenn.App., February 10, 1989), petition to rehear, 1989 WL 25253 (Tenn.App., March 21, 1989); ***Malone & Hyde Food Services,*** 642 S.W.2d at 159; ***Sutton v. First Nat'l Bank of Crossville***, 620 S.W.2d 526, 530 (Tenn.App. 1981).

In ***FDIC v. Tennessee Wildcat Services, Inc.***, 839 F.2d 251 (6th Cir. 1988), the use of the word "by" preceding a signature was held to be unambiguous:

---

[4]The earlier version of this statute is T.C.A. § 47-3-403 (1979).

9

> Where the principal is identified and shown
> on the face of the note as the maker and the
> word "by" precedes the signature of the
> signer, there is no ambiguity and the signer
> is not personally liable, absent some showing
> of fraud or other circumstance that requires
> a court to look beyond the face of the note.

*Id.* at 256. "If the language of a written instrument is clear and unambiguous, the court must interpret it as written, rather than according to the unexpressed intention of one of the parties." *Sutton*, 620 S.W.2d at 530. *See* ***Malone & Hyde Food Services***, 642 S.W.2d at 159. It is clear from the face of the promissory note that Mr. Armentrout signed on the signature line denoted for the representative of Armentrout Acres, Inc. Because Mr. Armentrout's signed in a representative capacity for Armentrout Acres, Inc., he is not personally liable on the promissory note. *See* T.C.A. § 47-3-402(b)(1). The trial court erred in denying Mr. Armentrout's motion for a directed verdict.

V.

We next consider the issue of whether Mrs. Armentrout is liable on the promissory note or otherwise responsible for any portion of the obligation to Alexander.

The trial court denied Mrs. Armentrout's motion for a directed verdict because it believed that Alexander's acceptance of the promissory note was at issue. However, as we have previously stated, Alexander is estopped to deny acceptance of the note. Since Mrs. Armentrout is not a party to the note and did not sign the note, she is not liable on it. *See* T.C.A. § 47-

10

3-401(a).[5]  The trial court erred in not directing a verdict for Mrs. Armentrout on this issue.

Even if we were to hold otherwise on the issue of Alexander's acceptance of the note, Alexander's theory as to Mrs. Armentrout's liability is without merit.  Alexander testified that Mrs. Armentrout was not present at the time that he and Mr. Armentrout reached their agreement to dissolve the partnership. He further testified that he and Mrs. Armentrout were not partners, and that although she was listed as a remitter on the $50,000 cashier's check, she never expressly promised to pay any portion of the $110,000 obligation.

Alexander predicates Mrs. Armentrout's liability on the circumstances surrounding the dissolution of the partnership.  He urges us to find that she is liable on a theory of implied contract because she was present at closing; because her name was on the $50,000 cashier's check as a remitter; because she signed the loan papers at the bank from which the $50,000 down payment came; because her name was reflected as a grantee along with her husband on the deed from Alexander conveying the dairy farm; and because her name was printed on a personal check used by Mr. Armentrout to make the first payment on the note.

---

[5]T.C.A. § 47-3-401(a) provides as follows:

> (a)  A person is not liable on an instrument unless
> (i) the person signed the instrument, or (ii) the
> person is represented by an agent or representative
> who signed the instrument and the signature is binding
> on the represented person under § 47-3-402.

We cannot agree with Alexander's analysis. Under general principles of contract law, a contract "must result from a meeting of the minds of the parties in mutual assent to the terms." *Sweeten v. Trade Envelopes, Inc*., 938 S.W.2d 383, 386 (Tenn. 1996). Alexander relies on *Scandlyn v. McDill Columbus Corp*., 895 S.W.2d 342 (Tenn.App. 1994), for the proposition that we must "look to the conduct of the parties in light of all the circumstances to determine whether an implied contract exists." *Id.* at 345-46. However, Alexander points to no specific facts to indicate that Mrs. Armentrout's words or conduct at closing give rise to such circumstances as support a contract implied in law. The mere presence of Mrs. Armentrout at closing and the appearance of her name on documents *associated* with the purchase of Alexander's interest are not enough to establish an implied contract holding her responsible for the obligation to Alexander.

VI.

The judgment of the trial court is reversed. The complaint is dismissed. Costs on appeal are taxed against the appellee. This case is remanded to the trial court for entry of a judgment consistent with this opinion, and for collection of costs, all pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Herschel P. Franks, J.

12

_____
Don T. McMurray, J.