IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 28, 2002

**STATE OF TENNESSEE EX REL. THE COMMISSIONER OF THE
DEPARTMENT OF TRANSPORTATION
v.
TOMMIE GOODWIN AND ARLENE GOODWIN**

**An Appeal from the Circuit Court for Gibson County
No. 7518     Clayburn L. Peeples, Judge**

-----

**No. W2002-00391-COA-R3-CV - Filed April 23, 2003**

-----

This is a condemnation case. The State filed a petition to condemn a portion of property owned by the defendants for the improvement of a highway. The defendants did not challenge the State's right to condemn the property, but they asserted that the amount proffered by the State as payment for the property was inadequate. After a jury trial, the jury returned a verdict of $13,500. The defendants moved for a new trial or, in the alternative, for an additur. The trial court concluded that the jury's verdict did not adequately compensate the defendants for either their financial loss or the loss to their business resulting from the condemnation, so it granted the motion for an additur, suggesting an additur of $12,000. The State accepted the additur under protest and now appeals. We affirm, finding that the trial court's suggested additur did not constitute an impermissible award for lost profits.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Paul G. Summers, Attorney General & Reporter, and George G. Boyte, Jr., Assistant Attorney General, Jackson, Tennessee, for the appellant, State of Tennessee ex rel. Commissioner of the Department of Transportation.

Richard Gossum, Trenton, Tennessee, for the appellees, Tommie Goodwin and Arlene Goodwin.

**OPINION**

On June 10, 1998, the Petitioner/Appellant State of Tennessee, through the Commissioner of the Tennessee Department of Transportation ("the State" or "TDOT"), filed a petition to condemn a portion of property owned by the Respondent/Appellees Tommie Goodwin[1] and his wife, Arlene Goodwin ("the Goodwins"), in furtherance of a highway improvement project.[2] The portion of the Goodwins' property at issue, approximately .092 acres, was situated alongside the highway and in front of the Carrie Bell Manor motel and apartments, which was owned and operated by the Goodwins.[3] The State sought to relocate two utility poles onto the Goodwins' property, which necessitated the destruction of some landscaping and the relocation of a gazebo that was in front of the motel.

Initially, the State sought to obtain the Goodwins' property in fee simple. The State later amended its petition to seek only a permanent utility easement on the property. Upon filing the complaint, the State deposited $10,450 with the clerk of the trial court, asserting that this amount was sufficient to cover the value of the land taken and incidental damages to the remainder. The Goodwins did not challenge the State's right to condemn the property. However, they objected to the amount deposited by the State, claiming that $10,450 was grossly inadequate to fairly compensate them for the damage done to their property.

On July 19, 2001, the matter was tried before a jury. The Goodwins proffered the testimony of an expert real estate appraiser, Michael Deal, ("Deal").[4] Deal testified that the value of the condemned property was $12,680, and that the damage to the remainder of the property was $163,464, for a total estimated amount due of $176,144. To arrive at the $12,680 value of the condemned property, Deal used a rate of $40,000 per acre multiplied by the acreage, .092 acres, valuing the property itself at $3,702. Deal added to that the value of the gazebo that was moved ($2,850) and the landscaping ($6,128), for a total of $12,680. The $163,464 remainder damages were calculated by multiplying the value of the property after the taking, which Deal valued at $817,320, by a 20% rate of decrease in value. Deal arrived at the 20% rate of decrease by comparing condemnation of the Goodwins' property to a similar condemnation at the nearby Tennessee Motel. In the case of the Tennessee Motel, the condemnation resulted an 18.9% decrease in the value of the property. That decrease resulted because, when the highway expanded and a portion of the property was condemned, the motel property was lower in elevation than the resulting roadway, and was in closer proximity to the easement. Deal said that the condemnation of the Goodwins' property was similar to the Tennessee Motel because the edge of the easement was approximately twelve feet

---

[1] Tommie Goodwin was the Mayor of Trenton, Tennessee at the time of trial.

[2] The project related to the intersection of United States Highway 45W and State Route 367.

[3] The Goodwins also lived at the Carrie Bell Manor and used it as their primary residence.

[4] Deal is an experienced real estate appraiser, having been in the business for 27 years and having taught real estate courses at a private real estate school in Nashville. The State did not challenge Deal's credentials.

closer to the parking area and the motel than before the acquisition. Deal also opined that, in the Goodwins' case, the condemnation would make it more difficult for large trucks to pull in and out of the parking lot at the Carrie Bell Manor. Moreover, the gazebo and landscaping that was removed could not be replaced without threat of future removal by the State, which would cause a further negative impact on the value of the property.

The Goodwins also testified at trial. Tommie Goodwin stated that the taking of the portion of land in the front of their property adversely affected the remainder in two ways. First, it destroyed the "buffer zone" of bushes and shrubs, which were intended to create a residential atmosphere, to promote safety, and reduce noise in the motel rooms and apartments. Second, Mr. Goodwin testified that the condemnation destroyed the motel's residential appearance by forcing the Goodwins to remove the gazebo and the ornamental plants and flowers they had put in to create such an appearance. He said that removal of the gazebo was particularly significant because the gazebo emblem had been used on the motel's advertising promotions, formal letterhead, and business cards. Therefore, the absence of the gazebo would materially change the appearance of the motel. Arlene Goodwin explained that, in order to put in another buffer zone, the Goodwins would have to destroy some of the adjoining blacktop. She said that this would result in truckers being unable to navigate through the property, and since truckers were a significant potion of the motel's business, this would have a negative impact on the business.

The State proffered its own expert, James E. Wade, Jr. ("Wade").[5] Wade valued the condemned property at $10,440.58, and concluded that there was no damage to the remaining property. To determine the value of the property, Wade used a rate of $21,952 per acre multiplied by the acreage, for a value of $2,019.58. Wade added this to amounts for the paving ($363), the gazebo ($5,688), a flag pole ($375), and landscaping ($1,995) in arriving at the total $10,440.58 figure. Wade also explained his opinion that there was no damage to the remainder of the Goodwins' property. Wade considered it important that the roadway was no closer to the motel as a result of the State's easement, and said that the Goodwins could restore the landscaping and gazebo on that part of the property in the future if they so desired. Wade said that he was the appraiser who calculated the decrease in value of the remainder for the Tennessee Motel property, finding that that property caused an 18.9% decrease in value to the remainder. He contrasted the condemnation of the Goodwins' property to the Tennessee Motel property, because the condemnation of the Goodwins' property resulted in neither a change in the roadway boundaries nor a change in elevation. Therefore, he concluded, the condemnation of the Tennessee Motel property was not analogous, and the State's easement the Goodwins' property did not result in a decrease in the value of the remainder.

At the conclusion of the trial, the jury awarded the Goodwins $10,500 in compensation for the property, and $3,000 for incidental damages to the remainder, for a total damage award of

---

[5]Wade is also an experienced real estate appraiser, having been an appraiser for 26 years. He worked for the State and had conducted appraisals in several counties in Tennessee. The Goodwins did not challenge Wade's credentials.

$13,500. On September 18, 2001, the Goodwins made a motion for a new trial or, in the alternative, for an additur, arguing that the $3,000 award attributed to damages to the remainder of the Goodwins' property was inadequate. On December 27, 2001, the trial court entered an order suggesting an additur to the jury's verdict in the amount of $12,000. The trial court concluded that the original award "did not adequately reflect either the financial loss to the defendant caused by the plaintiff's actions or the loss of business occasioned by the ongoing physical and geographic disruption caused by these same actions." The trial court denied the Goodwins' motion for a new trial provided the State accepted the additur. On January 25, 2002, the State accepted the additur under protest and filed the instant appeal. *See* Tenn. Code Ann. § 20-10-101(b)(1) (1994).[6]

The sole issue in this appeal is whether the trial court erred in suggesting an additur of $12,000 to the jury's award for diminution to the value of the remainder of the property. To review the propriety of a trial court's suggestion of an additur, a three-part test is generally employed. ***McKinney v. Smith County***, No. M1998-00074-COA-R3-CV, 1999 WL 1000887, at *4 (Tenn. Ct. App. Nov. 5,1999); ***Long v. Mattingly***, 797 S.W.2d 889, 896 (Tenn. Ct. App. 1990). First, the additur statute provides for a determination of whether the proof relating to damages preponderates against the trial court's suggestion of an additur. *See **McKinney***, 1999 WL 1000887, at *4; ***Long***, 797 S.W.2d at 896; *see also* Tenn. Code Ann. § 20-10-101(b)(2) (referring to Tennessee Rule of Appellate Procedure 13(d)). If the additur is supported by the evidence, two other factors are considered: "(1) the trial court's reasons for the additur, and (2) the relation between the amount of the additur and the amount of the jury's verdict." ***Phillips v. Perot***, No. 02A01-9704-CV-00094, 1998 WL 117325, at *2 (Tenn. Ct. App. Mar. 17, 1998) (citing ***Lynch v. Turner***, No. 01A01-9109-CV-00325, 1992 WL 23122, at *1 (Tenn. Ct. App. Feb. 12, 1992)), ***quoted in McKinney***, 1999 WL 1000887, at *4. "We examine the trial court's reasons for suggesting the additur because adjustments are proper only when the court disagrees with the amount of the verdict. We examine the amount of the suggested additur because adjustments that 'totally destroy' the jury's verdict are impermissible." ***McKinney,*** 1999 WL 1000887, at *4 (citations and quotations omitted). Determining whether a certain type of loss is compensable under Tennessee Code Annotated § 29-16-114 is a question of law, which is reviewed *de novo*. ***Metropolitan Dev. and Hous. Agency v. Trinity Marine Nashville, Inc.***, 40 S.W.3d 73, 77 (Tenn. Ct. App. 2000).

In this appeal, the State argues that the language used by the trial court in its order suggests that the court was attempting to compensate the Goodwins for lost profits to their motel business,

---

[6]That section provides:

> (b)(1) In all jury trials had in civil actions, after the verdict has been rendered, and on motion for a new trial, when the trial judge is of the opinion that the verdict in favor of a party should be increased, and an additur is suggested by the trial judge on that account, with the proviso that in case the party against whom the verdict has been rendered refuses to make the additur, a new trial will be awarded, the party against whom such verdict has been rendered may make such additur under protest, and appeal from the action of the trial judge to the court of appeals.

Tenn. Code Ann. § 20-10-101(b)(1) (1994).

an element of damages that is not compensable under the condemnation statutes. The State contends that "[f]inancial losses and loss of business evidenced in the present case are simply not proper elements of damages in an eminent domain proceeding." The State notes that Tennessee Code Annotated § 29-16-114(a) sets out the statutory elements of damages in an eminent domain case. The State argues that this statute does not authorize compensation for "loss of business" or "financial losses." *See State ex rel. Smith v. Overstreet*, 533 S.W.2d 283, 286 (Tenn. 1976). The Goodwins argue, however, that the trial court's order merely compensated them for the diminution in the value of their business, which is compensable under Tennessee Code Annotated § 29-16-114(a) under some circumstances. *See County of Greene v. Cooper*, 1990 WL 10586, at *3 (Tenn. Ct. App. 1990).

Tennessee Code Annotated § 29-16-114(a) provides:

> (a) In estimating the damages, the jury shall give the value of the land or rights taken without deduction, but incidental benefits which may result to the owner by reason of the proposed improvement may be taken into consideration in estimating the incidental damages. Whenever any person, agency, or other entity acquires interest in any parcel of real property and such acquisition requires the removal of furniture, household belongings, fixtures, equipment, machinery, or stock in trade of any person in rightful possession, regardless of whether such person has a legal interest in property, the reasonable expense of the removal shall be considered in assessing incidental damages.

Tenn. Code Ann. § 29-16-114 (a) (2000). Under this statute, a property owner may recover the value of the property actually taken, as well as incidental damages to any remaining property resulting from the taking. The value of the property is determined according to its fair market value, and "the decline in fair market value is also the test for ascertaining damages to any land remaining following any taking." *State ex rel. Comm'r of Dep't of Transp. v. Rummage*, No. 01A01-9011CV00402, 1991 WL 122885, at *3 (Tenn. Ct. App. July 10, 1991); *see also* Tenn. Code Ann. § 29-17-810 (2000). In assigning a value to incidental damages to the remainder, the trier of fact may include "anything that would injure the market value of the remaining land in an appreciable degree that is capable of ascertainment in dollars and cents." *City of Cookville v. Stites*, No. 01-A-01-9505-CV00199, 1995 WL 571851, at *4 (Tenn. Ct. App. Sept. 29, 1995).

The Supreme Court of Tennessee has recognized that section 29-16-114(a) does not "allow any claim for loss of profits" to be included in incidental damages. *Overstreet*, 533 S.W.2d at 286; *see also, e.g., McKinney*, 1999 WL 1000887, at *7 (opining that the cost of restoring access to property is not includable in a calculation of incidental damages). We look to the language of the order to determine if the trial court did, in fact, include an award for lost profits in the incidental damage award.

In its order, the trial court stated that an additur was appropriate because the original award "did not adequately reflect either the *financial loss* to the defendant caused by the plaintiff's actions

or the *loss of business* occasioned by the ongoing physical and geographic disruption caused by these same actions." (Emphasis added). This language must be viewed in light of the evidence presented at trial. Neither the Goodwins nor their expert proffered any evidence regarding the motel's actual or projected lost profits resulting from the condemnation. Rather, the Goodwins and their expert testified that the property value would suffer from the loss of the motel's residential motif, established by the landscaping and the gazebo, and because the easement would make the property less accessible for truckers. Both experts testified, without objection, regarding whether the State's use of the property negatively impacted the motel business as it related to the value of the remainder. Viewing the language of the order in light of the evidence presented at trial, we cannot conclude that the $12,000 additur was intended to compensate the Goodwins for lost profits.

We must next determine whether an additur based on the Goodwins' "loss of business" is permissible as it relates to the value of the remainder. Though lost profits are not recoverable, a decrease in the value of an ongoing business can, under some circumstances, be compensable as incidental damages under the statute. In *County of Greene v. Cooper*, the county filed a condemnation proceeding to acquire a 0.105 acre tract of land from the landowners in order to construct a bridge over a creek. The landowners owned a mill business that was bordered by the creek. *Cooper*, 1990 WL 10586, at \*1. In the ensuing condemnation action, the landowners asserted that the construction of the bridge adversely affected their mill business. The mill business supplied feed to local farmers, and the condemnation and construction of the bridge made it difficult for customers of the mill to park and load their trucks with feed. To prove this, the mill owners introduced into evidence sales tax records to show that the taking of the property decreased their sales by $193,000 and, consequently, changed the value of the remainder. *Id.* The jury awarded the landowners $2,000 for the land acquisition and $15,000 in incidental damages to the remainder. The county appealed, claiming that evidence of lost business profits and temporary inconvenience were inadmissible to show loss of value to the remainder. *Id.* This Court affirmed the admission of the sales tax records into evidence, stating:

> [T]he strip of land taken by Greene County was the only land available to be utilized as parking by [the landowners] and their customers. Consequently, the value of the remaining property as an ongoing business was substantially decreased, or alternatively, the land taken had a peculiar value to this owner as parking for his business. According to Tennessee case law . . ., the landowners were entitled to compensation for this particular effect on their business.

*Id.* at \*2. Thus, the consideration of the negative impact on business as an element of damages was upheld insofar as it decreased the value of the remainder of the property after the taking, "since it would be a factor having weight in the minds of a willing seller and an able and ready buyer." *Id.*

In this case, the evidence at trial supported the Goodwins' argument that the condemnation at issue decreased the value of the property after the taking. Incidental damages include "anything that would injure the market value of the remaining land in an appreciable degree that is capable of ascertainment in dollars and cents." *Stites*, 1995 WL 571851, at \*4. As in *Cooper*, evidence that

the condemnation would adversely affect the value of the Goodwins' business may also be considered evidence of incidental damage to the property itself. Deal testified that this condemnation was similar to another that caused a decrease in value to the similar property by 18.9%, and that the resulting decrease in value to the Goodwins' property, by comparison, would be approximately 20%, or $163,464. The Goodwins also testified that the removal of the gazebo and the destruction of the landscaping made their property less desirable to an able and ready buyer. Thus, the trial court's suggestion of an additur was based on evidence that the State's condemnation would cause a decrease in business and a resulting decrease in the value of the property. The trial court was apparently of the opinion that the $3,000 awarded by the jury was insufficient to compensate the Goodwins for that loss. Therefore, the trial court could properly consider the decrease in business, as it relates to the value of the property, in determining incidental damages to the remainder. Under these circumstances we cannot conclude that the trial court's suggestion of an additur was error.

The decision of the trial court is affirmed. Costs are to be assessed to the appellant, the State of Tennessee ex rel. the Commissioner of the Department of Transportation, for which execution may issue, if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE