IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
NOVEMBER 5, 2003 Session

# C. B. RAGLAND COMPANY v. MAXWELL ROOFING AND SHEET METAL, INC.

**Direct Appeal from the Circuit Court for Davidson County**
**No. 00C-2582     Marietta Shipley, Judge**

**No. M2003-00283-COA-R3-CV - Filed March 2, 2004**

This case arises out of a breach of contract by the Defendant for a roof Defendant installed on Plaintiff's freezer storage facility. The case was tried before a jury, who found the Defendant had materially breached the contract between the parties and awarded Plaintiff damages in the amount of $5,655.00. Subsequently, Plaintiff filed a motion to alter or amend the judgment or, in the alternative, a motion for additur or new trial. The trial court denied the motion to alter or amend the judgment but suggested an additur increasing the award to $30,655.00, which Defendant appealed. For the following reasons, we affirm the decision of the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Thomas C. Corts, Julie Bhattacharya Peak, Nashville, TN, for Appellant

James B. Johnson, Nashville, TN, for Appellee

## OPINION

### Facts and Procedural History

C.B. Ragland Company ("Ragland" or "Plaintiff") operates a 25,000 square foot freezer storage facility, which is designed to maintain temperatures at or around minus ten degrees Fahrenheit (-10° F). The walls of the building were made of cinder blocks and contained insulation inside the walls to maintain the internal sub-zero temperature. For several years, Ragland experienced icing problems inside the freezer storage facility as there was ice buildup in the corners and on the walls on the interior. In addition, moisture and water had built up on the exterior of the walls. Ragland decided that the ice must be coming from its roof and, therefore, contacted Maxwell

Roofing and Sheet Metal, Inc. ("Maxwell Roofing" or "Defendant") in 1997, requesting an estimate for a reroofing contract. In October 1997, Maxwell Roofing sent a bid to Ragland, listing the tasks that would be performed and a contract price of $151,314.00. Ragland agreed to this price, and Maxwell Roofing promptly began working on the project, which was completed in February 1998. Ragland paid Maxwell Roofing the contract price upon completion of the new roof.

After Maxwell Roofing completed the new roof in February 1998, Ragland continued to have icing problems on the interior of their freezer storage facility. It was later determined by Maxwell Roofing that the vapor barrier inside the walls was connected and tied into the old roof. When Maxwell Roofing replaced the old roof, it tore the vapor barrier in the walls. In addition, Maxwell Roofing had used a polyurethane foam, an adhesive insulator, in only a few places on the roof and not uniformly around the perimeter. Upon discovering that Ragland's building continued to experience problems, Ragland requested Maxwell Roofing to repair the roof, which Maxwell Roofing attempted to do after inspecting the building. These repairs by Maxwell Roofing proved to be unsuccessful as the icing problems continued on the interior of the building.

The parties eventually agreed to hire a roofing consultant, Richard Baxter ("Baxter"), to determine the cause of the icing problem in Ragland's building. Baxter recommended that the vapor barrier be extended further and that the walls of the building be coated in a sealant paint. Ragland demanded that Maxwell Roofing be responsible for at least part of the expense of Baxter's recommendations, and Maxwell Roofing's refusal prompted this lawsuit. Subsequent to the filing of this lawsuit, Ragland employed Refrigerated Construction Services ("RCS"), a roofing contractor located in Birmingham, Alabama, to remove any ice buildups and make any necessary repairs to the building to prevent further icing problems. RCS's repairs remedied many of the problems Ragland was experiencing, though some icing problems continued. After RCS performed such repairs, Ragland amended its complaint to ask for damages in the form of the cost of RCS's services.[1] After a four-day jury trial, the jury returned a verdict finding the Defendant had materially breached the contract and awarded Plaintiff the amount of $5,655.00. Plaintiff filed a motion to alter or amend the judgment or, in the alternative, Plaintiff requested an additur or new trial. After a hearing on this motion, the trial court judge denied the motion to alter or amend the judgment but suggested an additur of $25,000, setting the award at $30,655.00.[2] Defendant appealed to this Court and presents the following issue for our review: whether the trial court erred when it suggested an additur, increasing the judgment amount. Plaintiff presents an additional issue for our review: whether the trial court erred when it denied Plaintiff's motion to alter or amend the judgment. For the following reasons, we affirm the decision of the trial court.

---

[1] Ragland paid RCS $77,010.00 for repairing the roof and $9,779.37 for removing the ice that had already accumulated on the inside of the building.

[2] Though the trial court states that the total award is $30,565, it based this amount on the mistake that the jury awarded Plaintiff $5,665 rather than $5,655, which was the actual jury award.

## Standard of Review

When this Court reviews a trial court's denial of a party's motion to alter or amend a judgment under Tenn. R. Civ. P. 59, we must determine whether the trial court abused its discretion. *Cox v. Stafford*, No. E2002-01490-COA-R3-CV, 2002 Tenn. App. LEXIS 912, at *5-7 (Tenn. Ct. App. Dec. 23, 2002). For questions pertaining to the propriety of an additur, this Court's review is *de novo* accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. *Thomas v. Crockett*, No. 01-A-01-9608-CV-00380, 1997 Tenn. App. LEXIS 136, at *4-5 (Tenn. Ct. App. Feb. 28, 1997) (citing *Thrailkill v. Patterson*, 879 S.W.2d 836, 841 (Tenn. 1994)); Tenn. R. App. P. 13(d); Tenn. Code Ann. § 20-10-101(b)(2) (1994).

## Motion to Alter or Amend

We begin with Plaintiff's argument that the trial court erred when it denied Plaintiff's motion to alter or amend the judgment.[3] Specifically, Plaintiff argues that the jury award is contrary to the evidence that Plaintiff paid RCS a sum of $86,789.37, which Plaintiff claims as damages arising from Defendant's breach of the contract. Plaintiff contends that, because this amount was not disputed at trial by the Defendant, the trial court judge should have increased this award, relying on the Tennessee Supreme Court's decision in *Spence v. Allstate Ins. Co.*, 883 S.W.2d 586 (Tenn. 1994). That decision states that "a trial court *may* modify a judgment when the damages awarded by the jury conflict with the undisputed facts concerning damages." *Spence*, 883 S.W.2d at 595 (citing *Martin v. Prier Brass Mfg. Co.*, 710 S.W.2d 466 (Mo. Ct. App. 1986); *Dixie Ins. Co. v. Federick*, 449 So. 2d 972 (Fla. Dist. Ct. App. 1984)) (emphasis ours). Plaintiff's reliance on *Spence* is misplaced. *Spence* does not require or mandate that a trial court alter a jury award if the award conflicts with the undisputed evidence. *Sholodge, Inc. v. Gary*, No. 03A01-9605-CV-00180, 1996 Tenn. App. LEXIS 812, at *10-11 (Tenn. Ct. App. Dec. 16, 1996). Such a decision is within the trial court's discretion. We first note that the trial court judge, in her memorandum opinion, states that the evidence for the amount of damages was not undisputed. Therefore, *Spence* does not apply to this case. Even assuming, *arguendo*, that the evidence was undisputed by Defendant, after our review of the record, we cannot say that the trial court abused its discretion when it refused to grant Plaintiff's motion to alter or amend the judgment. Therefore, we affirm the trial court's decision on this motion.

## Additur

Defendant argues on appeal that the trial court, acting as "thirteenth juror," erred when it suggested an additur of $25,000, raising the total award to the Plaintiff to $30,655.00. When analyzing the propriety of an additur, this Court must utilize a three-step analysis. First, this Court,

---

[3] Plaintiff, in its brief, first argues that the trial court judge misapplied *Spence v. Allstate Ins. Co.* by stating that the damages must be "liquidated" in order for *Spence* to apply. However, after reviewing the record, it appears that the trial court judge correctly applied *Spence*, addressing the issue of whether the amount of damages was disputed.

pursuant to Tenn. Code Ann. § 20-10-101(b)(2), must determine whether the evidence preponderates against the trial court's suggestion of an additur. *McKinney v. Smith County*, No. M1998-00074-COA-R3-CV, 1999 Tenn. App. LEXIS 745, at *11-12 (Tenn. Ct. App. Nov. 5, 1999) (quoting *Phillips v. Perot*, No. 02A01-9704-CV-00094, 1998 Tenn. App. LEXIS 190, at *6-7 (Tenn. Ct. App. Mar. 17, 1998)). If the evidence supports the suggestion of additur, this Court must then determine if the trial court disagreed with the amount of the jury verdict. *Id*. at *12 (citing *Perot*, 1998 Tenn. App. LEXIS 190, at *7; *Long v. Mattingly*, 797 S.W.2d 889, 896 (Tenn. Ct. App. 1990)). If the trial court disagreed with the amount of the jury verdict, then this Court must examine the relationship between the amount of the jury verdict and the amount of the additur to determine whether the additur totally destroys the jury verdict. *Id*. (citing *Mattingly*, 797 S.W.2d at 896)).

First, this Court is of the opinion that the evidence does not preponderate against the trial court's suggestion of an additur. During the trial, the Plaintiff entered evidence showing that it had paid RCS a sum of $86,789.37 for repairs to Plaintiff's freezer storage facility in order to prevent any future icing problems. Therefore, given that Defendant presented testimony that it caused no damages to Plaintiff's building, the Plaintiff's estimated damages ranged from zero to $86,789.37. Though the trial court's additur significantly increased the amount of the jury verdict, the judgment remained within the range of estimated damages. *See id*. at *13-14. Therefore, this Court cannot say that the evidence preponderates against the trial court's suggestion of an additur. *See id*.

Next, this Court must review the trial court's reason for the additur, because a trial court must disagree with the amount of the jury verdict in order for an additur to stand. "[A] trial court may suggest an additur when a jury verdict is within the range of reasonableness of the credible proof but the court is of the opinion that the verdict is inadequate." *Perot*, 1998 Tenn. App. LEXIS 190, at *5 (citing *Coffey v. Fayette Tubular Prods.*, 929 S.W.2d 326, 330 (Tenn. 1996)). In her memorandum opinion, the trial judge states that, "although inside the range of reasonableness, [the jury verdict] was inadequate" and, therefore, the trial court suggested an additur of $25,000. In addition, the trial judge made statements during the hearing on the motion that she could find no justification for the amount of the jury verdict. Although the trial judge expressed concerns of judicial economy if a new trial were to be ordered, the record supports the notion that the trial judge did disagree with the jury verdict amount.

Finally, this Court must determine whether the suggested additur destroys the jury verdict. As this Court has noted before, we are reluctant to "establish a numerical standard for reviewing additur and remittitur cases." *McKinney*, 1999 Tenn. App. LEXIS 745, at *14 (citing *Foster v. Amcon Int'l, Inc*, 621 S.W.2d 142, 148 n.9 (Tenn. 1981); *Guess v. Maury*, 726 S.W.2d 906, 913 (Tenn. Ct. App. 1986); *Lebovitz v. Bearden*, No. 02A01-9211-CV-00308, 1993 Tenn. App. LEXIS 705, at *11-12 (Tenn. Ct. App. Nov. 16, 1993)). We note a concurring opinion of one judge who suggests:

> Perhaps the best way to reconcile this case with other similar cases is to place the emphasis on determining whether or not the additur or remittitur would result in an award not only proportionally different from the jury verdict but also substantially different in absolute

terms. That is to say, verdicts of relatively small amounts of money might be granted
additurs or remittiturs of greater percentages than verdicts of relatively large amounts.

*Perot*, 1998 Tenn. App. LEXIS 190, at *11-12 (Lanier, Sp. J., concurring). We cannot say that the trial court's suggested additur bears so little relation to the jury's verdict that it totally destroys the verdict. For these reasons, we affirm the trial court's suggestion of additur.

## Conclusion

For the reasons stated above, we affirm the decision of the trial court. Costs of this appeal are taxed to the Appellant, Maxwell Roofing and Sheet Metal, Inc., and its surety for which execution may issue if necessary.


_____
ALAN E. HIGHERS, JUDGE