IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 17, 2025 Session

## MARILYN BUTCHER ET AL. v. SHELBY COUNTY BOARD OF EDUCATION

**Appeal from the Circuit Court for Shelby County**
**No. CT-3389-21     Valerie L. Smith, Judge**

———————————————————

**No. W2024-01202-COA-R3-CV**

———————————————————

Appellee was injured in an automobile accident where Appellant's, a governmental entity, employee was 100% at-fault. On appeal, Appellant argues that the trial court erred in: (1) finding that Appellant's governmental immunity had been removed; (2) admitting testimony from two of Appellee's treating physicians; and (3) admitting certain medical billing records. Appellees ask this Court to award frivolous appeal damages. Discerning no error, we affirm the trial court order and deny Appellees' request for appellate attorney's fees.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Kavita Goswamy Shelat and Christian West-Coleman, Memphis, Tennessee, for the appellant, Shelby County Board of Education.

Lewis W. Lyons, Memphis, Tennessee, for the appellees, Marilyn Butcher and Ron Butcher.

## OPINION

### I. Background

On November 13, 2020, Appellee Marilyn Butcher suffered serious and permanent injuries in an automobile accident. Mrs. Butcher was driving on Kirby Parkway in Memphis when her vehicle was struck by a vehicle driven by Jewel Dockery, who was

employed by the Shelby County Board of Education (the "Board"). Mr. Dockery turned left from the private driveway of Kirby High School onto Kirby Parkway, striking Mrs. Butcher's vehicle. Shortly after the accident, Mr. Dockery died but not as a result of the accident.

On August 23, 2021, Mrs. Butcher and her husband, Ron Butcher (together, the "Butchers"), filed a complaint for negligence against the Board in the Shelby County Circuit Court ("trial court"). Mr. Butcher also asserted loss of consortium. Relevant here, the complaint alleged:

> 11. At all times pertinent hereto, Defendant Shelby County owned, operated, and/or controlled the motor vehicle operated by Jewell Dockery which was involved in the collision described herein.

> 12. At all times pertinent hereto, Defendant Shelby County employed Jewell Dockery[,] and Mr. Dockery was acting within the course and scope of his employment at all times material hereto.

On October 14, 2021, the Board filed its answer, wherein it "Admitted" both of the foregoing allegations.

On May 6, 2022, the Board served the Butchers with interrogatories, seeking information concerning any experts they intended to call as witnesses. On July 19, 2022, the Butchers responded, in part, that "No decision has been made as to any retained experts. Plaintiff will likely present expert testimony from one or more of her treating physicians." The following medical providers were identified as Mrs. Butcher's treating physicians: (1) Rance Wilbourn, M.D., with Lifestyle Neurology; (2) Mays & Schnapps Pain Clinic; and (3) Germantown Chiropractic. On November 4, 2022, the Board took Dr. Wilbourn's deposition. On October 17, 2023, the Butchers tendered a supplemental response to the Board's expert interrogatory. As discussed further below, the Butchers identified Dr. Wilbourn as a witness, who was expected to testify at trial.

On November 15, 2023, the trial began. The trial court heard testimony from the following witnesses: (1) Officers David Wilson and Algeron Brown, who responded to the accident; (2) Mrs. Butcher; and (3) Dr. Wilbourn. The trial court also received deposition testimony from the following witnesses: (1) Sunita Jain, M.D., a physician who treated Mrs. Butcher at the Baptist Concussion Center; (2) Kristen Ogburn, Mrs. Butcher's daughter; and (3) Mr. Butcher, who died after the complaint was filed but before trial. Relevant here, during trial, Exhibits 9 and 17 were marked for identification purposes only, with the trial court reserving ruling on whether these exhibits would be admitted into evidence.

At the close of trial, the Board moved for involuntary dismissal under Tennessee

Rule of Civil Procedure 41.02(2). Specifically, the Board argued that the Butchers failed to prove that Mr. Dockery was an employee of the Board, which was required to remove the Board's immunity under Tennessee Code Annotated sections 29-20-202(a) and 29-20-107, discussed *infra*. The trial court took the motion under advisement.

On June 28, 2024, the trial court filed its findings of facts and conclusions of law, which were later incorporated into its July 19, 2024 order of judgment. Relevant here, the trial court: (1) denied the Board's motion for involuntary dismissal on its finding that the Board admitted that Mr. Dockery was its employee; (2) admitted Exhibits 9 and 17 into evidence; (3) found Mrs. Butcher's testimony credible; (4) found Mr. Dockery 100% at fault for the accident; (5) found that, although Mrs. Butcher had some underlying medical conditions before the accident, after the accident "she no longer enjoyed things as she did before due to pain she experienced as well as other symptoms"; (6) found Dr. Wilbourn's testimony credible; (7) found that, based on Dr. Wilbourn's testimony, the accident exacerbated Mrs. Butcher's preexisting conditions, and Mrs. Butcher's injuries from the accident were permanent; (8) found that Dr. Wilbourn's testimony satisfied the four-part test of ***Long v. Mattingly***, 797 S.W.2d 889 (Tenn. Ct. App. 1990), and that he could testify concerning the reasonableness of both Mrs. Butcher's treatment and the associated charges; (9) overruled the Board's objections made during Dr. Jain's deposition; (10) found that Dr. Jain testified that Mrs. Butcher received treatment that was reasonable and necessary as well as causally related to the accident; and (11) found that Mrs. Butcher sustained a mild traumatic brain injury secondary to the accident, and that the accident exacerbated her preexisting injuries. Based on the foregoing findings, the trial court awarded Mrs. Butcher the following damages: (1) $64,671.03 for existing medical bills; (2) $40,000.00 for future medical expenses; and (3) $100,000.00 for noneconomic damages. The trial court also awarded Mr. Butcher $5,000.00 for his loss of consortium claim. The Board filed a timely notice of appeal.

## II. Issues

Although the Board raises ten issues for our review, we conclude that there are five dispositive issues, which we restate as follows:

1. Whether the trial court erred in finding that the Board's governmental immunity was removed.

2. Whether the trial court erred in admitting certain testimony from Dr. Wilbourn.

3. Whether the trial court erred in admitting certain testimony from Dr. Jain.

4. Whether the trial court erred in admitting Exhibits 9 and 17 into evidence.

5. Whether the trial court erred in finding that the Butchers proved causation.

The Butchers claim the appeal is frivolous and ask for an award of their appellate attorney's fees and costs.

### III. Standard of Review

We review a non-jury case "*de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise." **Bowden v. Ward**, 27 S.W.3d 913, 916 (Tenn. 2000) (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed *de novo* and "are accorded no presumption of correctness." **Brunswick Acceptance Co., LLC v. MEJ, LLC**, 292 S.W.3d 638, 642 (Tenn. 2008).

We also note that this Court is "required to defer to the trial court's credibility findings, including those that are implicit in its holdings." **Williams v. City of Burns**, 465 S.W.3d 96, 120 (Tenn. 2015); *see also* **Street v. Street**, No. E2016-00531-COA-R3-CV, 2017 WL 1177034, at *7 (Tenn. Ct. App. Mar. 29, 2017). In **Wells v. Tennessee Board of Regents**, 9 S.W.3d 779 (Tenn. 1999), the Tennessee Supreme Court explained that

> trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. *See* **State v. Pruett**, 788 S.W.2d 559, 561 (Tenn. 1990); **Bowman v. Bowman**, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991). Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. *See* **Tenn-Tex Properties v. Brownell-Electro, Inc.**, 778 S.W.2d 423, 425-26 (Tenn. 1989); **Mitchell v. Archibald**, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998). Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary. *See* **Humphrey v. David Witherspoon, Inc.**, 734 S.W.2d 315, 315-16 (Tenn. 1987); **Bingham v. Dyersburg Fabrics Co., Inc.**, 567 S.W.2d 169, 170 (Tenn. 1978).

**Wells**, 9 S.W.3d at 783. Accordingly, we defer to the trial court's finding that Dr. Wilbourn's testimony was credible.

### IV. Analysis

### A. Governmental Immunity

We first address the Board's arguments concerning governmental immunity. Specifically, the Board argues that: (1) to remove sovereign immunity, the Butchers were required to prove each element in Tennessee Code Annotated section 29-20-107, discussed *infra*; (2) the trial court was required to make specific findings as to each element in section

29-20-107; and (3) the trial court erred in denying the Board's motion for involuntary dismissal.

As a sovereign, the State of Tennessee is immune from all lawsuits except those for which it consents to be sued. *Mosley v. State*, 475 S.W.3d 767, 771 (Tenn. Ct. App. 2015) (quoting *Brewington v. Brewington*, 387 S.W.2d 777, 779 (Tenn. 1965)); Tenn. Const. art. I, § 17 ("Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct."); Tenn. Code Ann. § 20-13-102(a) ("No court in the state shall have any power, jurisdiction or authority to entertain any suit against the state . . . ."). Although the Governmental Tort Liability Act ("GTLA") "is premised explicitly on the absolute immunity of governmental entities[,]" *City of Lavergne v. S. Silver, Inc.*, 872 S.W.2d 687, 690 (Tenn. Ct. App. 1993), it provides for the removal of such immunity under certain exceptions.[1] Relevant here, governmental immunity is "removed for injuries resulting from the negligent operation by an employee of a motor vehicle or other equipment while [acting] in the scope of [his or her] employment." Tenn. Code Ann. § 29-20-202(a); *see also Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 368 (Tenn. 2011). More generally, governmental immunity is "removed for injury proximately caused by a negligent act or omission of any employee [acting] within the scope of his [or her] employment." Tenn. Code Ann. § 29-20-205; *see also Hughes*, 340 S.W.3d at 368.

As a threshold requirement for the removal of immunity, the Butchers were required to show that Mr. Dockery was an employee of the Board, who was acting in the scope of his employment at the time of the accident. As discussed above, in its answer, the Board "admitted" that: (1) "Shelby County owned, operated, and/or controlled the motor vehicle operated by Jewell Dockery"; (2) "Shelby County employed Jewell Dockery"; and (3) at the time of the accident, "Mr. Dockery was acting within the course and scope of his employment." The Board's admission that Mr. Dockery was a Board employee acting within the scope of that employment was not limited to its answer. On November 2, 2023, thirteen days before the trial began, the Board filed a response to the Butchers' motion in limine. Notably, the first two sentences under the "Background" portion of the Board's response stated:

> As noted by Plaintiff, this is a case about a motor vehicle accident involving Plaintiff and ***an employee of Defendant, Jewel Dockery. Mr. Dockery was driving in the course and scope of his employment at the time of the accident***.

(Emphasis added). Despite the Board's admissions, at trial, it moved for involuntary

---

[1] It is undisputed that the Board is a "governmental entity" as defined by the GTLA. *See* Tenn. Code Ann. § 29-20-102(3)(A) ("'Governmental entity' means any political subdivision of the state of Tennessee including, but not limited to, any . . . school district . . . [.]").

dismissal, alleging that the Butchers failed to prove that Mr. Dockery was an employee, as defined under the GTLA. The trial court denied the motion for involuntary dismissal on its finding that the Board admitted that Mr. Dockery was its employee operating within the scope of his employment at the time of the accident. Specifically, the trial court found that "it [is] contrary to the administration of justice that a motion for involuntary dismissal be granted regarding a fact admitted throughout the journey of this case."

On appeal, the Board argues that "[t]he question is whether [Mr.] Dockery is the **right type** of employee who can lift the [Board]'s immunity and thereby gain protection from his actions in his individual capacity." (Emphasis in the original). In support of this argument, the Board relies on Tennessee Code Annotated section 29-20-107(a), which provides that "[a]ny person who is not an elected or appointed official or a member of a board, agency or commission shall not be considered an employee of a governmental entity for purposes of this chapter unless the court specifically finds" five elements.[2] We conclude that the Butchers were not required to prove that Mr. Dockery was the "right type" of employee because the Board admitted that he was. If the Board believed that Mr. Dockery was not the "right type" of employee, and/or that the Butchers were required to provide more proof concerning the nature of Mr. Dockery's employment, the Board's answer should have reflected these concerns, but it did not. Rather, the Board simply admitted that Mr. Dockery was a Board employee operating within the scope of his employment. It is well-established that "[a]n admission in a pleading is conclusive against the pleader." *John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.*, 642 S.W.2d 151, 152-53 (Tenn. Ct. App. 1982). This Court has explained the reasoning behind

---

[2] These five elements are:

(1) The governmental entity itself selected and engaged the person in question to perform services;

(2) The governmental entity itself is liable for the payment of compensation for the performance of such services and the person receives all of such person's compensation directly from the payroll department of the governmental entity in question;

(3) The person receives the same benefits as all other employees of the governmental entity in question including retirement benefits and the eligibility to participate in insurance programs;

(4) The person acts under the control and direction of the governmental entity not only as to the result to be accomplished but as to the means and details by which the result is accomplished; and

(5) The person is entitled to the same job protection system and rules, such as civil service or grievance procedures, as are other persons employed by the governmental entity in question.

Tenn. Code Ann. § 29-20-107(a).

this rule, to-wit:

> This is so because pleadings are for the purpose of notifying adversary and the court of the contentions of the pleader and thus defining the issues. If a fact alleged in a pleading is admitted in the pleading of the adversary, then that fact ceases to be an issue in the case and there is no need to prepare or hear evidence on the subject.
>
> Facts confessed in pleadings are binding on the parties and offered evidence of such facts is properly excluded as irrelevant. ***Wilson v. Maury County Bd. of Ed.***, [302 S.W.2d 502, 507 (Tenn. 1957)].

***John P. Saad & Sons, Inc.***, 642 S.W.2d at 152; *see also* ***Old Hickory Coaches, LLC v. Star Coach Rentals, Inc.***, 652 S.W.3d 802, 813-14 (Tenn. Ct. App. 2021) (discussing ***Sakaan v. Fedex Corp., Inc.***, No. W2016-00648-COA-R3-CV, 2016 WL 7396050, at *4 (Tenn. Ct. App. Dec. 21, 2016)). By its answer, the Board admitted that, at the time of the accident, Mr. Dockery was an employee of the Board, acting within the scope of his employment. The Board's admissions notified both the Butchers and the trial court that these facts were *not* in dispute, the admitted facts were binding on the parties, and no further proof was necessary to establish them. Having admitted that Mr. Dockery was an employee of the Board, acting within the scope of that employment, the trial court did not err in denying the Board's motion for involuntary dismissal. *See* Tenn. R. Civ. P. 41.02(2); ***In re Estate of Price***, No. W2023-01508-COA-R3-CV, 2025 WL 289237, at *24 (Tenn. Ct. App. Jan. 24, 2025) (*no perm. app. filed*) (internal citations omitted) (explaining that "[a] motion for involuntary dismissal does 'not raise questions of law but rather challenge[s] the sufficiency of the plaintiff's proof.'"). Similarly, because the facts had been conclusively established, the trial court was not required to make specific findings of fact as to whether Mr. Dockery was a Board employee. Accordingly, we conclude that: (1) the Butchers were not required to prove each of the elements listed in Tennessee Code Annotated section 29-20-107 to remove the Board's sovereign immunity; (2) the trial court correctly denied the Board's motion for involuntary dismissal; and (3) the trial court was not required to make findings of fact concerning the elements listed in section 29-20-107.

### B. Evidentiary Issues

The next several issues concern the admissibility of certain evidence at trial. Specifically, the Board argues that the trial court erred in: (1) admitting portions of the expert opinions of Dr. Wilbourn and Dr. Jain that were allegedly not disclosed in the Butchers' discovery responses; (2) finding that Dr. Wilbourn was qualified to opine concerning the reasonableness, necessity, and cost of the medical charges Mrs. Butcher incurred from the accident; and (3) admitting Exhibits 9 and 17, *i.e.,* billing records that the Butchers allegedly failed to disclose during discovery.

Regarding evidentiary issues, the Tennessee Supreme Court has explained:

"Generally, the admissibility of evidence is within the sound discretion of the trial court." ***Mercer v. Vanderbilt Univ., Inc.***, 134 S.W.3d 121, 131 (Tenn. 2004) (citing ***Otis v. Cambridge Mut. Fire Ins. Co.***, 850 S.W.2d 439, 442 (Tenn. 1992)). "The trial court's decision to admit or exclude evidence will be overturned on appeal only where there is an abuse of discretion." ***Id.*** "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting ***State v. Shirley***, 6 S.W.3d 243, 247 (Tenn. 1999)). "The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court." ***Id.*** (citing ***Myint v. Allstate Ins. Co.***, 970 S.W.2d 920, 927 (Tenn. 1998)).

***Borne v. Celadon Trucking Servs., Inc.***, 532 S.W.3d 274, 294 (Tenn. 2017). With the foregoing in mind, we turn to the evidentiary issues.

### 1. Expert Witness or Treating Physician

The Board argues that portions of Dr. Wibourn's and Dr. Jain's testimonies were inadmissible. We begin with a brief review of certain discovery rules. Discovery is an important tool parties use to narrow their issues and avoid "trial by ambush." ***Small ex rel. Russell v. Shelby Cnty. Sch.***, No. W2007-00045-COA-R3-CV, 2008 WL 360925, at *12 (Tenn. Ct. App. Feb. 12, 2008) (quoting ***Austin v. City of Memphis***, 684 S.W.2d 624, 632 (Tenn. Ct. App. 1984)). Under these rules, trial courts are given authority to exclude the testimony of a party's expert witness when that party failed to disclose the witness as an expert during discovery. ***Id.*** An expert witness develops his or her opinion "in anticipation of litigation or for trial[.]" Tenn. R. Civ. P. 26.02(4). While many testifying physicians are expert witnesses, a *treating* physician may not be classified as such when their opinions are developed in the course of treating a patient, rather than in anticipation of litigation. *See* ***Small***, 2008 WL 360925, at *12; ***Alessio v. Crook***, 633 S.W.2d 770, 779-80 (Tenn. Ct. App. 1982). If a physician testifies as a treating physician, he or she is not subject to the disclosure requirement. ***Small***, 2008 WL 360925, at *12; ***Alessio***, 633 S.W.2d at 779-80.

### a. Dr. Wilbourn

Concerning Dr. Wilbourn's testimony, the Board first argues that

the trial court improperly allowed Dr. Wilbourn to testify outside the scope of a treating physician and instead as a Rule 26 expert witness without first disclosing his expert opinions as required by Rule 26.05. Specifically, Dr. Wilbourn testified about the necessity [of] services and charges from *10*

*different medical providers*, 8 of which he previously testified of having no knowledge.

(Emphasis in original). Tennessee Rule of Civil Procedure Rule 26.05 governs supplementary discovery responses and provides, in relevant part:

A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement the party's response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) **the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of that testimony**.

Tenn. R. Civ. P. 26.05(1) (emphasis added).

As discussed above, on May 6, 2022, the Board propounded expert interrogatories on the Butchers. On July 19, 2022, the Butchers responded, in part, that "No decision has been made as to any retained experts. Plaintiff will likely present expert testimony from one or more of her treating physicians." The following medical providers were identified as Mrs. Butcher's treating physicians: (1) Rance Wilbourn, M.D. with Lifestyle Neurology; (2) Mays & Schnapps Pain Clinic; and (3) Germantown Chiropractic. On November 4, 2022, the Board took Dr. Wilbourn's deposition. On October 17, 2023, the Butchers served the Board with a supplemental interrogatory response, wherein they identified Dr. Wilbourn as a witness expected to testify at trial. The response indicated that Dr. Wilbourn was "**not specifically retained as an expert witness[, but] [t]o the extent that any of his opinions or testimony are deemed to transcend the permissible scope for non-retained treating physicians, [the Butchers] hereby disclose[] Dr. Wilbourn as an expert witness**." (Emphasis added). The supplemental response also stated:

**Dr. Wilbourn is expected to testify regarding the past and ongoing treatment and diagnoses of Mrs. Butcher provided by him and other medical providers, the cause of her injuries, the reasonableness and necessity of her medical bills incurred to treat her injuries and her future prognosis**. Plaintiff would refer to Dr. Wilbourn's deposition transcript, which deposition was previously taken by the Defendant, for a more detailed description of the substance of the facts and opinions he is expected to provide at trial and the grounds for same, which transcript is incorporated herein by reference. **Further, his testimony will be based on his own**

- 9 -

> ***examination of Mrs. Butcher, her medical records, medical bills and
> history***.

(Emphases added). Contrary to the Board's allegations, the Butchers disclosed that Dr. Wilbourn could provide testimony beyond the scope of a treating physician, which testimony might extend to the level of an expert witness. Specifically, the Butchers disclosed that Dr. Wilbourn could be expected to testify concerning treatment and diagnoses that Mrs. Butcher received *from other providers*, including the reasonableness and necessity of the medical bills she incurred from such treatment.

Notwithstanding the fact that the Butchers' supplemental response clearly notified the Board concerning the likely scope of Dr. Wilbourn's testimony, the Board failed to preserve any objection to the disclosure. Indeed, when asked by the trial court whether the Board objected to Dr. Wilbourn's qualifications as an expert, its attorney responded as follows:

> The Court: Is there a stipulation as to his expert credentials?

> The Butchers' Attorney: No, I'm going to tender him – based on the admission of his CV, I'm going to tender him as not only an expert witness, but as a treating physician.

> The Court: All right. Any *voir dire*?

> The Board's Attorney: And I'd like clarification about what his specific expertise is going to be tendered so I can weigh in on that.

> The Butchers' Attorney: He's a board-certified neurologist that treats spinal and concussion patients, including those that have been involved in a car accident. He's been a licensed and practicing neurologist for – since 2005, I believe.

> Dr. Wilbourn: That is correct.

> The Board's Attorney: Yeah, that – yeah, yeah, that's fine for now on–

> The Court: Okay. Okay.

> The Board's Attorney: I'm not disputing that.

> The Court: Okay. ***All right. So no objection to the tendering as an expert.***

> The Board's Attorney: ***Right.***

- 10 -

(Emphases added).  Based on this exchange, we can only conclude that the Board explicitly waived its objection to Dr. Wilbourn being tendered as an expert, *i.e.,* a board-certified neurologist that treats spinal and concussion patients, including those involved in car accidents, at trial.  Accordingly, the trial court did not err in allowing Dr. Wilbourn's testimony.

### b. Dr. Jain

The Board appears to make two general arguments concerning the alleged inadmissibility of Dr. Jain's testimony.  First, the Board argues that the Butchers did not disclose Dr. Jain as an expert witness during discovery; the Board also contends that portions of Dr. Jain's testimony/opinions were not made to a reasonable degree of medical certainty.

Concerning the Board's argument that the Butchers failed to disclose Dr. Jain as an expert witness, the specific testimony to which the Board objects concerns Dr. Jain's opinions that: (1) Mrs. Butcher's motor vehicle accident with Mr. Dockery caused her injuries, *i.e.,* a mild traumatic brain injury, neck pain, and light and sound sensitivity; and (2) the treatment Mrs. Butcher received for such injuries was reasonable and necessary. As discussed above, if Dr. Jain testified in the capacity of a treating physician, the Butchers were not required to disclose her as an expert witness during discovery.  *See Small*, 2008 WL 360925, at *12; *Alessio*, 633 S.W.2d at 779-80.  In its appellate brief, the Board alleges that "Dr. Jain's causation opinion required disclosure because there is absolutely nothing in the testimony that shows the Court that she drew her causation opinion from her treatment of Mrs. Butcher."  Similarly, the Board argues that "Dr. Jain's opinions on the reasonableness and necessity of treatment from other medical providers" were inadmissible because she was not disclosed as an expert witness.  Turning to Dr. Jain's deposition, she testified extensively concerning her treatment of Mrs. Butcher.  From our review of the deposition, there is no indication that Dr. Jain's impressions or opinions were based on information she acquired in preparation for trial.  Indeed, on cross-examination by the Board's attorney, and over the objection of the Butchers' attorney, Dr. Jain was asked "if M[r]s. Butcher referenced any intention of litigation for her car accident," and she replied, "Not to my knowledge."  Indeed, the deposition testimony shows that Dr. Jain's opinions were formed through her treatment of Mrs. Butcher, *i.e.,* Dr. Jain "was an actor or viewer with respect to transactions or occurrences" that were the "subject matter of the lawsuit." *Alessio*, 633 S.W.2d at 780.  For example, Dr. Jain testified that, during her treatment of Mrs. Butcher, she learned, by taking a history from Mrs. Butcher, that she was involved in a motor vehicle accident.  Based on her discussions with Mrs. Butcher, Dr. Jain learned that Mrs. Butcher was traveling approximately 40 miles per hour when the truck driven by Mr. Dockery struck the front of her vehicle.  While taking Mrs. Butcher's history, Dr. Jain learned that Mrs. Butcher's complaints included ringing in the ears, pain in the ear, headaches, neck and shoulder pain, dizziness, and limitations in her household activities.

- 11 -

Additionally, Dr. Jain testified that she reviewed radiology reports from Mrs. Butcher's CAT scans and MRIs that were conducted after the accident. In reviewing her treatment notes, Dr. Jain testified that Mrs. Butcher received treatment from Methodist Germantown Hospital, Methodist Olive Branch Hospital, a pain specialist, and an ear, nose, and throat doctor. Dr. Jain further testified that, after obtaining Mrs. Butcher's history, she performed a physical examination, which revealed that Mrs. Butcher: (1) was unable to tolerate lights in the room; (2) had significant limitations in her neck range of motion; (3) suffered from acute muscle spasms; (4) had difficulty with balance; and (5) was unable to bend forward to touch her toes. Based on her examination, Dr. Jain diagnosed Mrs. Butcher with "motor vehicle accident with neck and shoulder pain, as well as headache complicated by spasms." Also, based on the foregoing, Dr. Jain opined that the cause of Mrs. Butcher's injuries was the motor vehicle accident with Mr. Dockery. Dr. Jain testified that, at the first visit, she counseled Mrs. Butcher concerning modalities with moist heat, and appropriate sleeping positions to help with neck pain; Dr. Jain also instructed Mrs. Butcher to continue physical therapy and to continue to follow up with her pain physician at Mays & Schnapp. Dr. Jain testified concerning Mrs. Butcher's follow-up appointments, during which Dr. Jain continued to discuss Mrs. Butcher's ongoing symptoms and continued to perform physical examinations on her. At Mrs. Butcher's second visit, Dr. Jain diagnosed her with a "mild traumatic brain injury secondary to motor vehicle accident with persistent pain, dizziness, and cognitive deficits." After this visit, Mrs. Butcher's treatment plan was to continue with outpatient physical therapy, dry needling, an at-home exercise program, and medication. Dr. Jain also testified that, according to her notes, Mrs. Butcher continued to receive injections in the neck and shoulders from Mays & Schnapp for pain. Dr. Jain testified that the foregoing treatments were reasonable, medically necessary, and customary in view of Mrs. Butcher's injuries. Dr. Jain also testified that the care she provided Mrs. Butcher was reasonable, medically necessary, and related to the injuries Mrs. Butcher sustained in the car accident with Mr. Dockery. Dr. Jain ultimately diagnosed Mrs. Butcher with "mild traumatic brain injury secondary to motor vehicle accident with persistent headache, neck pain, and light and noise sensitivity." Because Dr. Jain's opinions and testimony were based on her treatment of Mrs. Butcher, we conclude that Dr. Jain testified as a treating physician. *See Small*, 2008 WL 360925, at *13; *Alessio*, 633 S.W.2d at 779. As such, the Butchers were not required to disclose her as an expert witness during discovery. *Small*, 2008 WL 360925, at *12; *Alessio*, 633 S.W.2d at 779-80. Accordingly, the trial court did not abuse its discretion in admitting Dr. Jain's deposition testimony.

Second, the Board argues that Dr. Jain's testimony concerning the alleged exacerbation of Mrs. Butcher's pre-existing injuries as well as her opinions concerning the reasonableness and necessity of treatment from other medical providers were inadmissible because they were not made to a reasonable degree of medical certainty. At the outset of Dr. Jain's deposition, the Butchers' attorney asked her, "if [he] ask[ed] any opinion questions [during the deposition] . . . [could Dr. Jain] give . . . only opinions that are to a reasonable degree of medical certainty or more likely true than not," to which Dr. Jain answered: "Yes." After Dr. Jain testified concerning her treatment of Mrs. Butcher, the

Butchers' attorney again asked whether "all [of] the opinions [she had] given [in the deposition had] been to a reasonable degree of medical certainty," to which Dr. Jain answered: "Yes." From this testimony, we can only conclude that Dr. Jain's testimony was made with a reasonable degree of medical certainty. Thus, the Board's second argument concerning Dr. Jain's testimony is without merit.

### 2. Dr. Wilbourn's Opinion Concerning the Reasonableness, Necessity, and Cost of Mrs. Butcher's Care

The Board's second argument concerning Dr. Wilbourn is that the trial court erred in finding that he was qualified to opine as to the reasonableness, necessity, and cost of Mrs. Butcher's treatment. To recover the cost of Mrs. Butcher's medical bills, the Butchers were required to prove that the costs were "reasonable and necessary." ***Dedmon v. Steelman***, 535 S.W.3d 431, 438 (Tenn. 2017). "In all but the most obvious and routine cases, plaintiffs must present competent expert testimony to meet this burden of proof." ***Id.*** (quoting ***Borner v. Autry***, 284 S.W.3d 216, 218 (Tenn. 2009)). In many personal injury cases such as this one, the "expert testimony" required to meet the plaintiff's burden is often supplied by his or her treating physician. ***Monypeny v. Kheiv***, No. W2014-00656-COA-R3-CV, 2015 WL 1541333, at *27 (Tenn. Ct. App. Apr. 1, 2015). It is well-settled that

> [a] physician who is familiar with the extent and nature of the medical treatment a party has received may give an opinion concerning the necessity of another physician's services and the reasonableness of the charges. ***Employers Ins. of Wausau v. Carter***, 522 S.W.2d 174, 176 (Tenn. 1975). To be qualified to render these opinions, the physician must first demonstrate (1) knowledge of the party's condition, (2) knowledge of the treatment the party received, (3) knowledge of the customary treatment options for the condition in the medical community where the treatment was rendered, and (4) knowledge of the customary charges for the treatment. *See **Nash v. Carter***, App. No. 87-192-11, Slip op. at 13, 1987 WL 19312 (Tenn. Ct. App. Nov. 4, 1987).

***Long***, 797 S.W.2d at 893; *see also **Dedmon***, 535 S.W.3d at 438. We conclude that the foregoing requirements were met in this case such that Dr. Wilbourn was qualified to render opinions concerning the necessity of his and other physicians' services and whether the charges Mrs. Butcher incurred were reasonable.

### a. Knowledge of Mrs. Butcher's Condition

First, Dr. Wilbourn's testimony established that he had knowledge of Mrs. Butcher's condition. He testified that, at her first visit in July 2021, he obtained Mrs. Butcher's history and learned that she was seeing him for a "post-concussion injury due to

a motor vehicle collision." Dr. Wilbourn elaborated that Mrs. Butcher suffered from whiplash, daily headaches, a decreased range of motion in her neck, and photo sensitivity to light. Based on these observations, he diagnosed her with "intracranial injury with loss of consciousness, headache, neck pain, muscle spasm, and nerve pain." When asked about his last appointment with Mrs. Butcher, which occurred the day before trial began, Dr. Wilbourn testified that, although she had made improvements, Mrs. Butcher's head injury persisted, and it was likely that she would be impaired for the remainder of her life as a result of her injuries from the motor vehicle accident.

### b. Knowledge of Mrs. Butcher's Treatment and of the Customary Treatment Options in the Memphis Area

Dr. Wilbourn's testimony also established that he had knowledge of the treatment Mrs. Butcher received and of the customary treatment options for her condition in the Memphis area. Specifically, he testified that he reviewed Mrs. Butcher's medical records from Methodist Germantown Hospital and Methodist Olive Branch Hospital. Methodist Olive Branch Hospital treated Mrs. Butcher immediately following the accident and diagnosed her with acute headache and concussion syndrome, which Dr. Wilbourn opined was consistent with his diagnosis of her injuries. Dr. Wilbourn also testified that Mrs. Butcher was treated by Mays & Schnapp and a chiropractor for pain management. Dr. Wilbourn also noted that he had prescribed physical therapy, which Mrs. Butcher received from both Results Plus and Regional One Physical Therapy. Dr. Wilbourn acknowledged the radiological tests performed on Mrs. Butcher to rule out any other injuries that could be causing her symptoms. After testimony concerning the foregoing treatment, the following exchange occurred:

> The Butchers' Attorney: Based on your treatment over what I believe, Doctor, was 14 visits and your familiarity with the other treatment that we just went over, do you feel that you have knowledge of the treatment Ms. Butcher has received since the car crash?
>
> A: I do.
>
> Q: Doctor, based on your education, training, and experience, are you aware of the customary treatment options in the Memphis area for Ms. Butcher's injuries?
>
> A: Yes.
>
> Q: Has Ms. Butcher's treatment been consistent with those customary options?
>
> A: Yes.

The Board did not object to this line of questioning.[3]  As such, Dr. Wilbourn's undisputed testimony establishes that he had sufficient knowledge not only of Mrs. Butcher's treatment but also of the customary treatments in the Memphis area for injuries such as hers.

### c. Knowledge of the Customary Charges for Mrs. Butcher's Treatment

Concerning the fourth element, Dr. Wilbourn demonstrated that he was familiar with the customary charges for the treatment Mrs. Butcher received.  Specifically, Dr. Wilbourn testified that, prior to trial, he was provided with Mrs. Butcher's medical bills, which he reviewed.  From his review, Dr. Wilbourn testified that the medical bills: (1) correlated with the dates of service in Mrs. Butcher's medical records; and (2) were related to injuries she sustained in the accident.  Dr. Wilbourn further opined that the treatment Mrs. Butcher received was medically necessary, and the charges set out in the medical bills were reasonable and customary for the Memphis area.  Nonetheless, at trial, the Board made several objections to Dr. Wilbourn's ability to answer questions concerning Mrs. Butcher's medical bills.  Specifically, the Board attorney asserted that Dr. Wilbourn did not have knowledge "about billing," to-wit:

> I understood that Dr. Wilbourn had been tendered as an expert neurologist. He has not been tendered as an expert on charges, and his prior deposition testimony that his expert disclosure is based on says that his testimony today will be consistent with his discovery deposition when it comes to his lack of knowledge as to billing.

On appeal, the Board cites the following testimony from Dr. Wilbourn's deposition in support of its argument that Dr. Wilbourn was not an expert in "billing":

---

[3] Part of the Board's appellate argument concerning the second element is that Dr. Wilbourn opined about care Mrs. Butcher received from providers whose bills were not part of Trial Exhibit 9.  Because the trial court did not award Mrs. Butcher medical bills from any provider except for those that appeared in Trial Exhibit 9, there is no reversible error.

The Board further argues that the trial court erred in allowing Dr. Wilbourn to opine concerning charges incurred at his medical practice and Results Physiotherapy related to the treatment of pre-existing conditions that were unrelated to injuries Mrs. Butcher sustained from the automobile accident.  Notably, in its brief, the Board fails to cite to Dr. Wilbourn's testimony to support its argument.  Rather, it cites a billing summary from Results Physiotherapy and a more detailed bill from the same practitioner that covered four of Mrs. Butcher's visits to that practitioner.  That bill notes that Mrs. Butcher was diagnosed with cervicalgia (neck pain), dizziness and giddiness, and headache, and that she was driving a car when she was injured in a collision with another car.  In short, the bill shows that Mrs. Butcher was treated for injuries related to the motor vehicle collision with Mr. Dockery.  Furthermore, the Board provides no citation to any evidence showing that Dr. Wilbourn provided opinions concerning treatment Mrs. Butcher received for injuries or symptoms unrelated to the collision, nor is there any indication that the trial court awarded damages for any injuries unrelated to the accident.

- 15 -

The Board's Attorney: Just going to hand you a document that's been Bates-labeled Butcher 15. I've highlighted a line in that bill from Lifestyle Neurology. Can you read the highlighted statement?

Dr. Wilbourn: Per Medicare, concussions and headaches were paid as medicals in a settlement and are not covered.

Q: Do you know anything about the billing for your services?

A. Very little.

Q: Do you know what that statement means?

A: I do not.

Q: Do you know who would have put in that statement on the bill?

A: Our biller.

Q: Who is the biller for Lifestyle Neurology?

A: Sharon Lusk (phonetic).

Q: Okay. Do you know where Sharon would have gotten that kind of information about there being a medical settlement?

A: No.

Q: Okay.

A: Don't know anything about it.

Based on this testimony, the Board argues that Dr. Wilbourn "does not have knowledge about the billing for his own services at Lifestyle Neurology for him to satisfy elements 3 and 4 [of the **Long** requirements] because a billing specialist handles the billing for Lifestyle Neurology." As the trial court correctly noted in its order, a practitioner may possess knowledge concerning appropriate *charges* for medical treatments but be unaware of the *billing practices* related to those charges. Indeed, many practitioners and hospitals employ certified billing and coding specialists to convert the medical services rendered by a practitioner into a code that is used to bill the patient's insurance and/or the patient. The mere fact that Dr. Wilbourn does not have knowledge of his clinic's billing practices does not *ipso facto* demonstrate that he was unfamiliar with the customary charges for the

- 16 -

treatment Mrs. Butcher received.

Concerning the fourth *Long* element, the Board also argues that Dr. Wilbourn based his opinion regarding "the reasonableness of medical charges for six different medical providers . . . on bare, unsupported, and unqualified opinions contained in the declarations of records custodians for those medical providers." In support of its argument, the Board cites the following portion of Dr. Wilbourn's testimony:

The Board's Attorney: When [the Butchers' attorney] was questioning you about [treatment] from other providers, is part of your opinion of reasonableness built on the affidavits that have been received from these different medical providers?

A: Yes.

Q: Okay. So I'm understanding that your opinion of reasonableness is coming from, in part, the reasonableness affidavits that have been already gathered.

A: Sure.

In citing the foregoing, the Board omits the below portion of Dr. Wilbourn's testimony, which immediately followed the above line of questioning:

The Board's Attorney: If you did not have the reasonableness affidavits of these other providers, would you have enough knowledge about the services rendered for you to wholly and dependently come up with a conclusion of reasonableness?

A: With the reasonableness, yes.

Q: Okay.

A: Yes.

Q: Okay. How about reasonable charges in the community for services, like physical therapy, like chiropractor, like radiology, six, seven different providers that were referenced on direct examination?

A: Yeah, I have a pretty good sense of what those services generally are charged at.

Q: Okay. And that's because you are – you refer enough patients and you

have occasion to look at those bills?

A: Yes. I've been a doctor for 23 years, so yes, I have a decent understanding of what – basic charges of other providers and diagnostic tests.

The omitted portion of Dr. Wilbourn's testimony demonstrates that Dr. Wilbourn was familiar with the customary charges for the treatment Mrs. Butcher received.

From the foregoing, we conclude that Dr. Wilbourn's testimony, which the trial court found credible, satisfied the **_Long_** criteria. As such, Dr. Wilbourn was qualified to testify concerning the necessity of his and other practitioner's services and the reasonableness of charges associated with those services. *See **Long***, 797 S.W.2d at 893; *see also **Dedmon***, 535 S.W.3d at 438. Accordingly, the trial court did not err in allowing such testimony.

### 3. Billing Records

The Board's final evidentiary issue concerns the admissibility of Trial Exhibits 9 and 17. Exhibit 9 is a medical billing summary. It shows the date Mrs. Butcher received a medical service, from which provider, and the amount charged. Ten providers are listed in this summary, with the cost of services totaling $64,671.03, *i.e.*, the amount the trial court awarded to Mrs. Butcher for medical bills she incurred as a result of the accident. Exhibit 17 contains itemized medical bills for services rendered to Mrs. Butcher from seven providers. The medical billing summary from Exhibit 9 is found at the end of Exhibit 17. As noted above, the trial court initially marked Exhibits 9 and 17 for identification only. After the testimony concluded, the trial court allowed the parties to brief their arguments concerning the admissibility of these exhibits. On December 6, 2023, the Board filed a brief concerning the inadmissibility of, *inter alia*, Exhibits 9 and 17. In its brief, the Board alleged that the exhibits were inadmissible for the following reasons: (1) Exhibit 17 was inadmissible because the billing records for the providers listed in the exhibit had not been properly authenticated under Tennessee Rules of Evidence 901(a) and 902(11); (2) because the billing records from Exhibit 17 were inadmissible and formed the basis for the summary in Exhibit 9, Exhibit 9 was also inadmissible; (3) all of the billing records were inadmissible under Tennessee Rules of Evidence 702, 703, and 401 because the "reasonableness of charges [could not] be established through purported records custodians who lack[ed] knowledge, experience, or training in billing;" (4) the billing records were inadmissible through Dr. Wilbourn's testimony because his testimony relied on opinion testimony from untrustworthy declarations; (5) the billing records for Lifestyle Neurology, Dr. Wilbourn's practice, were inadmissible under Tennessee Rules of Evidence 902(11), 702, and 703 because Dr. Wilbourn lacked knowledge concerning the billing practices of his clinic; and (6) because Dr. Wilbourn "does not have expertise in billing as required under [Tennessee Rules of Evidence] 702 and 703 to give competent opinion testimony about the medical bills contained in . . . Exhibits 17 and 9[,] he cannot give competent

expert testimony, [and] his opinions are irrelevant under [Tennessee Rule of Evidence] 402."[4]  In its final order, discussed *supra*, the trial court overruled the Board's objections to the exhibits and admitted both into evidence.

As set out in its appellate brief, the Board's entire argument concerning Exhibits 9 and 17 is:

> For the same reason Dr. Wilbourn's undisclosed expert opinions about the reasonableness and necessity of medical care and medical charges should have been excluded under Rule 26.05 and Rule 37.03, ***so, too, should the medical bills summarized at Trial Exhibits 9 and itemized at Trial Exhibit 17 have been excluded because they were not disclosed in the Butchers' October 2023 supplementary discovery response***. Trial Exhibit 9 consists of the summarized medical bills from 10 different medical providers and totals $64,671.03. (*See* Vol. 10 at pp. 85-89). In their October supplementary discovery response, however, the Butchers set out expenses from *16* different medical providers that only totals $51,556.24. (*Compare* Vol. 2 p. 182-185 with Vol. 10 at pp. 85-89). That the collection of medical providers and medical bills about which Dr. Wilbourn might testify could be in such flux between October and November 2023 when the accident occurred three years earlier in November 2020 shows how unreliable Dr. Wilbourn's trial testimony of the necessity and reasonableness of the medical charges reflected in Trial Exhibits 9 and 17 actually is.

(Emphasis added).  As shown above, the Board did not make the foregoing argument in the trial court.  It is well-settled that issues not presented to the trial court will not be considered for the first time on appeal.  ***Taylor v. Beard***, No. W2000-02768-COA-R3-CV, 2002 WL 1751342, at *2-3 (Tenn. Ct. App. Feb. 6, 2002) (citations omitted).  As a reviewing court, we can "only decide issues which were brought to the attention of the trial judge, 'and acted upon or pretermitted by him [or her].'"  ***Id.*** (quoting ***Clement v. Nichols***, 209 S.W.2d 23, 23 (Tenn. 1948)).  On this Court's review of the Board's trial brief concerning the alleged inadmissibility of Exhibits 9 and 17 as well as the trial transcript, there is no indication that the Board argued that the exhibits should not be entered into evidence because they were not disclosed in the Butchers' October 2023 supplementary discovery response.  As such, we decline to consider this argument for the first time on appeal.  There is no basis to reverse the trial court's decision to admit Exhibits 9 and 17 into evidence.

### C. Causation

---

[4] On appeal, the Board made arguments (4), (5), and (6) in the section of its brief where it alleged that Dr. Wilbourn's testimony was inadmissible.

The Board's final argument is that the trial court erred in finding that the Butchers proved causation, *i.e.,* that Mr. Dockery, as an employee of the Board, caused Mrs. Butcher's injuries. The Board's entire argument on this question is set out in its appellate brief as follows:

> In light of the above-referenced arguments regarding the inadmissibility of the expert opinions of Dr. Rance Wilbourn and Dr. Sunita Jain, the trial court erred in finding that the Butchers proved causation.

Having determined that the trial court did not err in admitting the opinions and testimony of Dr. Wilbourn and Dr. Jain, this issue is now moot.

### D. Frivolous Appeal

The Butchers ask for an award of appellate attorney's fees based on Tennessee Code Annotated section 27-1-122, which provides that, when it appears that an appeal is frivolous or taken solely for delay, this Court may "award just damages against the appellant, which may include . . . costs . . . and expenses incurred by the appellee as a result of the appeal." Tenn. Code Ann. § 27-1-122. "An appeal is frivolous when it has 'no reasonable chance of success,' *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999), or is 'so utterly devoid of merit as to justify the imposition of a penalty.'" *Whalum v. Marshall*, 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006) (quoting *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978)). Whether an award of frivolous appeal damages is warranted rests solely in this Court's discretion, *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009), and we exercise such discretion "sparingly so as not to discourage legitimate appeals." *Whalum*, 224 S.W.3d at 181. Based on our review of the record and in the exercise of our discretion, we decline to award the Butchers frivolous appeal damages.

### V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The Butchers' request for frivolous appeal damages is denied. The case is remanded for such further proceedings as are necessary and consistent with this opinion. Costs of the appeal are assessed to the Appellant, Shelby County Board of Education. Execution for costs may issue if necessary.

            s/ Kenny Armstrong
            KENNY ARMSTRONG, JUDGE